**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

XIONGJIAN CHEN,

               Plaintiff,

v.

PETER ZUGUANG WANG, *et al.*,

               Defendants.

Civil Action No. 22-4708 (MAS) (JBD)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

       This matter comes before the Court on Defendants Peter Zuguang Wang ("Wang"), Cenntro Automotive Group Limited, a Cayman Islands corporation ("CAG"), Cenntro Enterprise Limited, a Hong Kong company ("CEL"), and Cenntro Electric Group Limited f/k/a Naked Brand Group Limited's, an Australian corporation ("CENN") (collectively, "Defendants") motion to dismiss Plaintiff Xiongjian Chen's ("Plaintiff") Complaint. (ECF No. 12.) Plaintiff opposed (ECF No. 21), and Defendants replied (ECF No. 24). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## I.   <u>BACKGROUND</u>[1]

### A.   The Parties

Wang is the former Chairman and Chief Executive Officer ("CEO") of CAG, a designer and manufacturer of electric vehicles, and he is currently the owner and Chairman of CEL, CAG's controlling stockholder. (Compl. ¶¶ 10-11, ECF No. 1.) In 2021, CAG sold its operating subsidiaries to NBG, a publicly-traded Australian clothier, in exchange for NBG stock (the "Transaction"). (*See id.* ¶¶ 26-27.) NBG also changed its name to CENN. (*Id.* ¶ 27.) Wang serves as CENN's Chairman and CEO. (*Id.* ¶ 10.) CEL holds a majority of seats on CENN's Board of Directors. (*Id.* ¶ 27.)

Plaintiff is the former Chief Operating Officer ("COO") of CAG. (*Id.* ¶¶ 7-8, 15, Ex. A.) Plaintiff served in that position for approximately three and a half years, until his resignation on February 28, 2021. (*Id.* ¶ 22.) Thereafter, he transitioned to the role of a consultant to CAG, serving in that capacity until his termination on September 26, 2021. (*Id.* ¶ 25.)

### B.   CAG Grants Plaintiff Millions of Stock Options

On July 15, 2017, Plaintiff entered into an agreement with CAG to serve as the company's COO (the "Employment Agreement"). (*Id.* ¶ 15.) According to Plaintiff, the Employment Agreement provided him "6,300,000 options with a $1.65 exercise price, from the available pool of CAG options, to be vested in five installments over four years (with 1,260,000 vested options

---

[1] The relevant facts are derived from the Complaint and assumed true for the purposes of this motion.

granted immediately, and 1,260,000 vesting each year thereafter)" (the "Employment Agreement Options"). (*Id.* ¶¶ 9, 15, Ex. A.)[2]

At the same time, Plaintiff also purportedly entered into a separate agreement with Wang and CEL ("the CEL Agreement") that provided Plaintiff with "2,700,000 options in CAG, with a $1.65 exercise price, to be provided by CEL and to be vested in five installments over four years (with 540,000 vested options granted immediately, and 540,000 vesting each year thereafter that Plaintiff provided service to CEL)" (the "CEL Agreement Options"). (*Id.* ¶ 15, Ex. B.) In total, the CAG Employment Agreement and the CEL Agreement Options (together, the "Options Agreements") granted Plaintiff 9 million CAG options. (*Id.*)

**C.    CAG Purportedly Attempts to Restrict and Alter Plaintiff's Options**

In December 2019, CAG's Chief Financial Officer ("CFO") allegedly provided Plaintiff with a document titled "[CAG] Incentive Stock Option Agreement" (the "2019 Stock Option Agreement"). (*Id.* ¶ 17.) By this time, 5.4 million of Plaintiff's 9 million options had vested. According to Plaintiff, the 2019 Stock Option Agreement materially differed from the Options

---

[2] It is undisputed that the Employment Agreement contains a Delaware choice-of-law provision. Delaware law allows a corporation to issue stock options. *Telxon Corp. v. Bogomolny*, 792 A.2d 964, 976 (Del. Ch. 2001) (citing Del. Code Ann. tit. 8, § 157). "An option is a right to purchase a stock at a given price." *AT&T Corp. v. Lillis*, 953 A.2d 241, 244 n.1 (Del. 2008). The designated price "is known as the *exercise price*." *Id.* Typically, when a stock option "vests," the option holder has an immediate right to "exercise" the option and convert it into stock by paying the exercise price. The option, therefore, does not automatically become stock at the time of vesting; the holder must usually take an action—the "exercise"—to obtain the promised shares. *See, e.g.*, *Eluv Holdings (BVI) Ltd. v. Dotomi, LLC*, No. 6894, 2013 WL 1200273, at *10 (Del. Ch. Mar. 26, 2013) (drawing a distinction between the vesting and actual exercise of options); *Knight v. Caremark Rx, Inc.*, No. 1750, 2007 WL 143099, at *3-4 (Del. Ch. Jan. 12, 2007) (interpreting a stock option provision that provided for accelerated vesting upon an employee's departure following a change in control of the entity). The terms of stock options must be "set forth or incorporated by reference in the instrument or instruments evidencing such . . . options." Del. Code Ann. tit. 8, § 157 (West 2017). For Plaintiff's stock options, here, he alleges that the terms are contained in two agreements: the Employment Agreement and the CEL Agreement (as later defined). (Compl. ¶¶ 15, 24.)

3

Agreements in three ways: (1) it stated that the Employment Agreement granted Plaintiff 5.8 million options rather than 6.3 million options; (2) it "made no mention of Plaintiff's CEL Options at all"; and (3) it stated that Plaintiff would forfeit his options if he did not exercise them within three months of his termination or disaffiliation from CAG. (*Id.* ¶ 18.) Plaintiff purportedly raised these issues to CAG's CFO, but he received no response. (*Id.*) As a result, Plaintiff did not sign the 2019 Stock Option Agreement. (*Id.*)

Four months later, on April 27, 2020, Wang organized a Zoom meeting among key CAG executives, including Plaintiff. (*Id.* ¶ 19.) Plaintiff alleges that Wang proposed to convert all CAG options into shares of CAG common stock to "speed up the process of a prospective merger and facilitate the conversion of CAG's options into publicly traded common stock." (*Id.*)

On May 5, 2020, CAG's CFO alerted Plaintiff that CAG was "making preparations for a deal with a special purpose acquisition company ("SPAC")." (*Id.* ¶ 20.) Plaintiff alleges that he "preliminarily agreed" with Wang to "return his 3,500,000 unvested Options to the available pool of CAG options and retain his 5,500,000 already-vested Options." (*Id.*) According to Plaintiff, he understood that the already-vested Options would be "converted into freely tradeable stock in the prospective SPAC deal." (*Id.*) The agreement was further contingent on Plaintiff's understanding from Wang that the vested Options would be "treated equally alongside other CAG options in a SPAC deal or similar transaction." (*Id.*)

In or around June 2020, CAG purportedly presented Plaintiff with an "Option to Stock Agreement" that would "cancel his existing vested and unvested Options in exchange for alternative share-based compensation to be issued once CAG's stock was publicly traded." (*Id.* ¶ 21.) According to Plaintiff, CAG's Human Resources department represented that the Option to Stock Agreement did not include any forfeiture provision that would divest Plaintiff of options

upon his termination or disaffiliation from CAG. (*Id.*) Relying on CAG's purported representations, Plaintiff signed the Option to Stock Agreement. (*Id.*)

### D.   Plaintiff's Resignation as COO

On February 28, 2021, Plaintiff resigned from his position as COO of CAG and assumed the role of a consultant to CAG. (*Id.* ¶ 22.) On March 5, 2021, CAG's CFO informed Plaintiff that the Option to Stock Agreement was purportedly invalid and requested that Plaintiff sign the 2019 Stock Option Agreement that he had previously refused to sign. (*Id.* ¶ 23.) According to Plaintiff, he objected to the request, explaining that replacing the Options Agreements with the 2019 Stock Option Agreement would effectively eliminate the right to his vested options because of his resignation as COO. (*Id.*) In response, Plaintiff alleges that CAG's CFO assured him that the terms of the Options Agreements would govern the rights to his options. (*Id.*)

On or about September 23, 2021, however, Wang allegedly requested that Plaintiff return a portion of his Options granted pursuant to the Employment Agreement and CEL Agreement in order to facilitate the issuance of compensation for other executives. (*Id.* ¶ 24.) Specifically, Plaintiff alleges that Wang requested that he return all 9 million of his Options which had vested under the Options Agreements by that time. (*Id.*) Plaintiff refused, and three days later on September 26, 2021, Wang allegedly sent Plaintiff two separate letters on behalf of CAG and CEL. (*Id.* ¶ 25.) According to Plaintiff, the first letter informed him that his total options were being reduced from 9 million to 5.5 million, while the second letter informed Plaintiff that he was being terminated. (*Id.*) Plaintiff further alleges that the purpose of his termination was "presumably to deprive [him] of his vested Options on the basis that he was no longer affiliated with the company." (*Id.*)

### E.   CAG Merges with NBG

Plaintiff learned of CAG's deal with NBG, the Transaction, when it was publicly disclosed by NBG in a Form 6-K filed with the United States Securities and Exchange Commission on November 5, 2021. According to Plaintiff, the Form 6-K addressed Plaintiff's options as follows:

> Each CAG employee stock option outstanding immediately prior to the Closing will be converted into an option to purchase a number of NBG ordinary shares equal to the number of CAG shares for which such stock option was exercisable immediately prior to the Closing multiplied by the Exchange Ratio (as defined below) at an option exercise price equal to the exercise price per share of such stock option immediately prior to the Closing divided by the Exchange Ratio, as determined in accordance with the Acquisition Agreement (the 'Converted Options'). Following the Closing, the Acquisition Shares will be registered for resale with the SEC by NBG.

(*Id.* ¶ 28.)

In the lead-up to the Transaction, CAG's CFO and Executive Vice President ("EVP") allegedly assured Plaintiff multiple times that his options would be converted into CENN stock once the Transaction was complete. (*Id.* ¶ 30.) According to Plaintiff, however, the day the Transaction closed, CAG's CFO informed Plaintiff that his options were excluded from the pool of convertible post-Transaction options because he was not "affiliated" with CAG following the termination in September 2021. (*Id.* ¶ 31.)

On January 21, 2022, Plaintiff's counsel wrote to Wang challenging the treatment of Plaintiff's options. (*Id.* ¶ 32.) According to Plaintiff, CAG's response on March 11, 2022, "implicitly acknowledge[ed] that CAG rendered Plaintiff's Options worthless and frustrated the rights granted to him under his Employment Agreement." (*Id.*) Plaintiff alleges that had his vested CAG options been converted to CENN stock after the Transaction, he would have had stock valued at $19 million. (*Id.* ¶ 36.)

**F.     This Action**

On July 22, 2022, Plaintiff filed the instant action, asserting the following eleven causes of action: (1) breach of the Employment Agreement against Wang and CAG; (2) breach of the CEL Agreement against Wang and CEL; (3) breach of the implied covenant of good faith and fair dealing in connection with the Employment Agreement against Wang and CAG; (4) breach of the implied covenant of good faith and fair dealing in connection with the CEL Agreement against Wang and CEL; (5) tortious interference with the CEL Agreement against Wang and CAG; (6) fraud against CAG, CEL, and Wang; (7) promissory estoppel against Wang, CAG, and CEL; (8) negligent misrepresentation against Wang, CAG, CEL, and CENN; (9) unjust enrichment against Wang and CEL; (10) unjust enrichment against CENN; and (11) conversion against Wang, CAG, CEL, and CENN. (*See generally* Compl.)

On September 26, 2022, Defendants filed the instant motion to dismiss the Complaint. (Defs.' Moving Br., ECF No. 12-1.)

## II.   <u>LEGAL STANDARDS</u>

**A.     Rule 12(b)(2)[3]**

Rule 12(b)(2) "provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant." *Dzielak v. Whirlpool Corp.*, No. 12-89, 2018 WL 6985013, at *2 (D.N.J. Dec. 21, 2018), *report and recommendation adopted*, No. 12-89, 2019 WL 145608 (D.N.J. Jan. 8, 2019). "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v.*

---

[3] Unless otherwise stated, all references to "Rule" or Rules" refer to the Federal Rules of Civil Procedure.

*Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)).

The Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by New Jersey's long-arm statute. *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221 (D.N.J. 2020). New Jersey's long-arm statute permits the same protections afforded by the Due Process Clause under the Fourteenth Amendment of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Therefore, the Court may exercise personal jurisdiction so long as the defendant maintains "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Although a plaintiff bears the burden of showing that personal jurisdiction exists, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citation omitted). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the

plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

**B.      Rule 12(b)(6)**

Rule 12(b)(6) "provides that a court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). While Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III.   **DISCUSSION**

On this motion, Defendants move to dismiss Plaintiff's breach of contract claims in Counts I through IV, as well as his tort claims in Counts V through XI, for failure to state a claim pursuant to Rule 12(b)(6).[4] In addition, Defendants move to dismiss the Complaint against CAG and CEL for lack of personal jurisdiction under Rule 12(b)(2). Because jurisdiction is a threshold question, the Court will address those arguments first, before considering Defendants' arguments related to Plaintiff's specific claims.

### A.      **Personal Jurisdiction Over CAG and CEL**

The Court is not satisfied that it has personal jurisdiction over CAG and CEL. A court is authorized to exercise two types of personal jurisdiction: general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction applies when an individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v.*

---

[4] With respect to the controlling law, the parties do not dispute that Counts I and III are governed by Delaware law pursuant to the choice-of-law clause in Plaintiff's Employment Agreement. (*See* Compl., Ex. A § 8(b).) "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4662223, at *2 (D.N.J. Sept. 18, 2014) (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Accordingly, Delaware law applies to Counts I and III. With respect to Counts II and IV, the Court finds, *infra*, that New Jersey law applies because the CEL Agreement does not contain a similar choice of law provision. Finally, as to the remaining claims (Counts V-XI), the parties agree that New Jersey substantive law applies pursuant to New Jersey's default choice-of-law rules. (Defs.' Moving Br. 6; Pl.'s Opp'n Br. 18-36.)

*Bauman*, 571 U.S. 117, 137 (2014)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Specific jurisdiction, on the other hand, allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Here, Plaintiff admits that CAG is incorporated under the laws of the Cayman Islands and CEL is incorporated under the laws of Hong Kong. (Compl. ¶¶ 8, 11.) Thus, to establish general jurisdiction, Plaintiff must demonstrate that CAG and CEL have their principal places of business in New Jersey or have contacts so continuous and systematic to essentially render them "at home" in New Jersey. *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014). In that respect, the Court finds that Plaintiff has shown neither. First, a corporation's principal place of business is determined as of the date the action was commenced for purposes of general jurisdiction. *See, e.g.*, *In re Gerber Prods. Co. Baby Food Litig.*, No. 21-1977, 2021 WL 4148107, at *2 (D.N.J. Sept. 13, 2021). Plaintiff, however, presents no allegations pertaining to CAG's and CEL's principal places of business or other contacts as of July 2022, when Plaintiff commenced this lawsuit. Moreover, Plaintiff does not allege that CAG or CEL have any employees, bank accounts, land or personal property, or telephone listings in New Jersey. To the extent that Plaintiff asserts that CAG and CEL receive certain mailings, *i.e.*, SEC filings, at an address in Freehold, New Jersey, the Court finds that this, alone, is insufficient grounds for general personal jurisdiction. *See B2 Opportunity Fund, LLC v. Trabelsi*, No.

11

17-10043, 2017 WL 3707383, at \*5 n.6 (D. Mass. Aug. 28, 2017) (noting that "SEC filings alone are insufficient to demonstrate principal place of business in response to a jurisdictional challenge") (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010)). As such, CAG and CEL are not "at home" in New Jersey and are thus, not subject to general personal jurisdiction here. *See Daimler AG*, 571 U.S. at 137.

To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over Defendants," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Plaintiff alleges contractual, quasi-contractual, and tort claims against CAG and CEL. Because specific jurisdiction analysis is claim-specific, the Court typically analyzes the contract and tort claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 256-60 (3d Cir. 2001). Claim-specific analysis, however, is not required where the claims at issue factually overlap. *O'Connor*, 496 F.3d at 318 n.3. *Cf. Remick*, 238 F.3d at 255 (providing that it is not always necessary to conduct claim-specific analysis in every case involving multiple claims, however, the district court should have done so where claims consisted of breach of contract, defamation, misappropriation, and intentional interference).

Plaintiff's contract, tort, and quasi-contract claims stem from the same underlying factual circumstances—namely, the communications and representations underlying the performance of the Employment Agreement and CEL Agreement, including the subsequent failure to include Plaintiff's options among the CAG options converted into the right to purchase NBG/CENN stock in the Transaction—and the parties have likewise addressed the issue of specific personal jurisdiction without differentiating between specific claims. The Court will, therefore, analyze Plaintiff's claims simultaneously to discern whether it may properly exercise specific personal

jurisdiction over CAG and CEL. *See Grant Indus., Inc. v. Isaacman*, No. 21-13094, 2022 WL 2358422, at *10 (D.N.J. June 30, 2022) (analyzing, *inter alia*, breach of contract, misappropriation of confidential information and trade secrets, fraud, and conversion claims together because they arose from the "same sequence of events and factual allegations"); *Beemac, Inc. v. Republic Steel*, No. 20-1458, 2021 WL 2018681, at *4 (W.D. Pa. May 20, 2021) (analyzing breach of contract, unjust enrichment, account stated, fraud in the inducement, and negligent misrepresentation claims together because those claims stemmed from same communications and representations underlying creation and performance of an alleged contract and subsequent nonpayment); *Neopart Transit, LLC, v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 WL 714043, at *2-4 (E.D. Pa. Feb. 23, 2017) (simultaneously analyzing, *inter alia*, breach of contract, unjust enrichment, and intentional interference claims because they stemmed from the same conduct). Because the Supreme Court has instructed that in assessing personal jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), the Court will separately assess CAG's and CEL's contacts with New Jersey.

### 1. Purposeful Availment

Turning to the first requirement of specific personal jurisdiction, the Court must be satisfied that CAG and CEL purposefully directed their conduct or activities to New Jersey. Plaintiff's opposition argues, in short, conclusory fashion, simply that "CAG and CEL have purposely availed themselves of the privilege of conducting activities within New Jersey, including the refusal to convert Plaintiff's shares in CAG as part of the Transaction." (Pl.'s Opp'n Br. 40.) Defendants refute Plaintiff's contentions in their entirety and argue that CAG and CEL did not purposefully avail themselves of the privilege of conducting business in New Jersey. Specifically, Defendants contend that the Complaint contains "no specific allegations that CAG and CEL directed activities

relevant to this dispute to New Jersey." (Defs.' Moving Br. 39.) Defendants further highlight that Plaintiff pleads "only that Defendants 'have the requisite contacts with New Jersey so as to properly exercise personal jurisdiction,'" (Compl. ¶ 14), and that this "unsupported conclusory allegation falls far short of the showing required to exercise specific personal jurisdiction over CAG and CEL." (*Id.*) (citing *Wade v. Kenan Advantage Grp., Inc.*, No. 20-18155, 2021 WL 4704962, at *2, *7 (D.N.J. Oct. 8, 2021)) (dismissing complaint broadly alleging defendant was "engaged in business within . . . New Jersey on a regular systemic, continuous and substantial basis and has purposefully established significant contacts within New Jersey").

At the outset, the Court finds it noteworthy that neither CAG nor CEL is authorized to do business in New Jersey. (Declaration of Peter Wang in Support of Defs.' Motion to Dismiss ("Wang Decl.") ¶¶ 5, 15.) Wang has further certified that neither defendant has any offices, employees, bank accounts or operations of any kind in New Jersey. (*Id.*) In fact, according to Wang, neither CAG nor CEL has a registered agent for service of process in New Jersey, and they are not registered as foreign corporations with the New Jersey Division of Revenue and Enterprise Services. (Wang Decl. ¶¶ 5-6, 15-16.)

Moreover, neither the Complaint, nor Plaintiff's Declaration submitted in opposition to Defendants' motion to dismiss alleges that the contracts underlying this dispute—the Employment Agreement and the CEL Agreement—were executed in, or had any other connection to, New Jersey. In contract disputes, such as this one, non-resident defendants deliberately target a forum when, among other activities, they "engage[] in significant activities within [the] State" or create "'continuing obligations' [with] residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (citation omitted). "[T]he court 'must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the

contract, and the parties' actual course of dealing.'" *Knierim v. Siemens Corp.*, No. 06-4935, 2008 WL 906244, at *7 (D.N.J. Mar. 31, 2008) (quoting *Remick*, 238 F.3d at 256). Here, the only evidence related to the location, character of the contract negotiations, terms of the contract, and the parties' course of dealing has been provided by Defendants. In that regard, Wang certifies that Plaintiff entered into the Employment Agreement with CAG, dated July 15, 2017, which Wang "negotiated and signed in [his] capacity as Chief Executive Officer of CAG, and not in [his] individual capacity." (Wang Decl. ¶ 7.) Further, Wang declares that "[n]either Plaintiff nor I negotiated or signed the Employment Agreement in New Jersey." (*Id.*) Similarly, Wang declares that the CEL Agreement, which was signed by Wang in his "capacity as the sole director of CEL," was "not negotiated in New Jersey," "not execute[d] [. . .] in New Jersey," and "Plaintiff did not affix his signature" in New Jersey. (*Id.* ¶¶ 17-18.) Plaintiff provides no evidence to refute those statements, nor does he assert that performance of the contracts or breach of the contracts occurred in New Jersey.

In that regard, to the extent that breach of the contracts turns on the NBG Transaction and certain alleged misrepresentations made by CAG's CFO, David Ming He ("He"), and CAG's EVP, Kelly Chow ("Chow"), related to the conversion of Plaintiff's options (*see* Chen Decl. ¶ 7 ("the transaction [] serves as the basis for my damages in this case")), Plaintiff asserts no jurisdictionally

relevant facts pertaining to the Transaction or those statements.[5] In fact, he admits, both in his Complaint and Declaration, that he has no personal knowledge of the Transaction. (*See* Compl. ¶ 26; Chen Decl. ¶¶ 2, 8, 15) (relying on information contained in public filings). And, as it pertains to the misrepresentations purportedly made by He and Chow (Compl. ¶ 30), Plaintiff does not allege where those misrepresentations were made or where Plaintiff received them. Rather, Plaintiff asserts only that Chow "was based in New Jersey." (Chen. Decl. ¶ 7.)

The Court, therefore, finds that CAG and CEL have not purposefully availed themselves of the laws of New Jersey on Plaintiff's contract, tort, or quasi-contract claims.

### 2. Remaining Elements

Because all three elements of the test must be met to establish specific jurisdiction, the Court need not consider the remaining two elements. *See O'Connor*, 496 F.3d at 317. Accordingly, the Court finds that Plaintiff fails to meet his burden to show that this Court has personal jurisdiction over CAG and CEL. *Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) ("[B]are pleadings alone are insufficient to withstand a motion to dismiss for lack of personal jurisdiction.") (internal quotation marks omitted).[6]

---

[5] For tort claims like tortious interference, fraud, and negligent misrepresentation, the Court may exercise personal jurisdiction when the *Calder* effects test is satisfied. *Calder v. Jones*, 465 U.S 783 (1984); *see also Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Under this test, a plaintiff may demonstrate specific personal jurisdiction if he or she shows: (1) "[t]he defendant committed an intentional tort; (2) "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) "[t]he defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998).

[6] Because the Court does not have personal jurisdiction over CAG and CEL, it will not consider Defendants' arguments for dismissal of any claims asserted by Plaintiff against those two defendants. In other words, the Court will only address claims asserted against Wang and CENN.

**B.      Claims Against Wang (I-IX, XI) and CENN (VIII, X, XI)**

Before analyzing the remaining claims separately, Defendants contend, more generally, that any claims against Wang and CENN should be dismissed because (1) Wang is not a party to the Employment Agreement or the CEL Agreement and (2) the Complaint fails to allege any tortious or actionable conduct committed by Wang or CENN. (Defs.' Moving Br. 27-31.)[7] In response, Plaintiff contends that Wang is liable for breaching the Employment Agreement and the CEL Agreement. (Pl.'s Opp'n Br. 37.) As for the Employment Agreement, Plaintiff acknowledges that Wang is not a party; however, Plaintiff contends that Wang caused CAG to violate the agreement, and therefore, he is responsible for causing the breach. (*Id.*) With respect to the CEL Agreement, Plaintiff maintains that because Wang signed the agreement, he is a party to it, and further, the Complaint is "replete with Wang's false representations" related to Plaintiff's options. (*Id.*)

Here, the Court agrees with Defendants' position that, as alleged, Wang cannot be held liable for Plaintiff's breach of contract claims in Counts I, II, III, and IV. "It is a general principle of contract law that only a party to a contract may be sued for breach of that contract." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) (citing *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991)). "Indeed, Delaware law clearly holds that officers of a corporation are not liable on corporate contracts *as long as they do not purport to bind themselves individually.*" *Id.* (emphasis added) (citing *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439, 441 (Del. Super. Ct. 1968)); *see BAM Int'l, LLC v. MSBA*

---

[7] Plaintiff asserts ten different causes of action against Wang, including four breach of contract claims related to the Employment Agreement and CEL Agreement (Counts I-IV) and six tort claims (Counts V-IX, XI). (*See generally* Compl.) Plaintiff also asserts three tort claims against CENN (Counts VIII, X, and XI). (*Id.*)

*Grp. Inc.*, No. 21-0181, 2021 WL 5905878, at \*8 (Del. Ch. Dec. 14, 2021) (finding that "[c]orporate officers are not liable for breach of contracts entered by the corporation to which they have not bound themselves personally"). Similarly, under New Jersey law, a corporate officer "cannot be liable for breach of contract . . . where he simply signed on behalf of the corporate entity." *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 WL 482327 (D.N.J. Feb. 19, 2008); *Home Buyers Warranty v. Roblyn Dev. Corp.*, No. A-0500-05T5, 2006 WL 2190742, at \*4 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (holding officer not personally liable even where he signed contract without noting his corporate title); *Lexins, LLC v. Powerplace Software, Inc.*, A-4578-10T3, 2012 WL 1537431, at \*2 (N.J. Super. Ct. App. Div. May 3, 2012) ("[A]n individual who signs a contract will not be personally liable if their execution is as an officer of a corporation.").

Because the Complaint does not allege that Wang sought to bind himself, individually, under the Employment Agreement or the CEL Agreement, the Court dismisses Counts I, II, III, and IV against him. As to the remaining tort claims (Counts V through XI), the Court will address Wang and CENN's purported actionable conduct in detail below, *supra*.

### C.    Tort Claims (Counts V-XI)[8]

In Counts V through XI, Plaintiff asserts various tort claims, including tortious interference with the CEL Agreement, fraud, negligent misrepresentation, promissory estoppel, unjust enrichment, and conversion. Defendants move to dismiss these claims for failure to state a claim. The Court will address these claims as they relate to Wang and CENN, in turn.

Briefly, before considering each of these claims individually, the Court addresses enforceability of the CEL Agreement. On this motion, Defendants submit that the CEL Agreement is unenforceable because it omits an essential term—the identities of the "Major Shareholders" from whom Plaintiff was to receive his options. (Defs.' Moving Br. at 32.) The CEL Agreement instead provides that the "[M]ajor [S]hareholders . . . would offer to grant [Plaintiff] stock options," and then goes on to state that the "Major Shareholders [were] to be named later." (*Id.*) (quoting Compl., Ex. B) (emphasis omitted). Because the CEL Agreement does not identify the Major Shareholders, and Plaintiff does not allege that they were indeed named later, Defendants contend that the CEL Agreement is void for vagueness as a matter of law. (*Id.*)

---

[8] With respect to Plaintiff's tort claims (Counts V through XI), Defendants apply New Jersey substantive law pursuant to New Jersey's default choice-of-law rules. In that connection, the Court notes that no choice-of-law clause applies and Plaintiff has not identified another state with a greater interest here than New Jersey. *See Labbe v. OSI Outsourcing Sols., Inc.*, No. 14-5049, 2015 WL 1851141, at *2 (D.N.J. Apr. 22, 2015). In fact, Plaintiff's opposition to the instant motion relies exclusively on New Jersey law in responding to Defendants' arguments related to Counts V through XI.

Under New Jersey law,[9] "parties create an enforceable contract when they agree on its essential terms and manifest an intent that the terms bind them." *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004). Therefore, a contract is unenforceable for vagueness when its terms are too indefinite to allow a court to ascertain with reasonable certainty what each party has promised to do. *See Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992). New Jersey courts focus on the performance promised in testing an agreement for vagueness. *See Malaker Corp. S'holders Protective Comm. v. First Jersey Nat'l Bank*, 395 A.2d 222, 227 (N.J. App. Div. 1978) ("An agreement so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty is not a contract, and clearly is not an enforceable one.") (citing *Friedman v. Tappan Dev. Corp.*, 126 A.2d 646, 650 (1956)), *certif. denied*, 401 A.2d 243 (N.J. 1979). "This does not mean that each term must be exactly spelled out." *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995). Rather, "[w]here the court can determine the contract's 'essential terms' to which the parties manifested an intent to be bound, the contract is enforceable. *Id.* (citing *Ryan*, 608 A.2d at 284).

Here, the CEL Agreement states: "[W]e would offer to grant you stock options exercisable to purchase an aggregate of 2,700,000 shares of the Cenntro's common stock ("Stock Options") from the Major Shareholders to be named later." (Compl., Ex. B.) While Defendants submit that the names of the Major Shareholders is an essential term, and as such, their omission from the CEL

---

[9] Although Plaintiff alleges that the CEL Agreement is governed by Delaware law (*see* Compl., ¶ 62), the CEL Agreement does not contain a Delaware choice-of-law clause. Thus, default New Jersey choice-of-law principles apply. This Court has held that no conflict exists between New Jersey and Delaware law with respect to when a contract is unenforceable for vagueness—the critical defect according to Defendants. *Hertz Corp. v. Frissora*, No. 19-8927, 2021 WL 2253526, at *5-6 (D.N.J. June 3, 2021). So it follows, even under Delaware law, the outcome is the same: "Delaware courts 'will not enforce a contract that is indefinite in any of its material and essential provisions.'" *Omega Cap. Mgmt. Partners, LLC v. Schrage*, No. 20-1735, 2021 WL 2036672, at *2 (D. Del. May 21, 2021) (citation omitted).

Agreement renders it void for vagueness, the Court is not persuaded. Rather, the Court finds that the CEL Agreement contains all material and essential terms, including the type, quantity, and exercise price of the stock options granted to Plaintiff by the "Major Shareholders." (Compl., Ex. B.) Indeed, the CEL Agreement even includes a vesting schedule. (*Id.*) While the only item missing from the CEL Agreement, as argued by Defendants, is the identities of the Major Shareholders, Defendants notably fail to argue why those names are important, let alone essential. *Lo Bosco*, 891 F. Supp. At 1026 (finding that "[t]he law generally and in New Jersey does not favor voiding a contract for vagueness.").

### 1. *Tortious Interference with the CEL Agreement (Count V)*

In Count V, Plaintiff asserts a claim of tortious interference with the CEL Agreement against Wang.

According to Defendants, however, that claim should be dismissed based on Plaintiff's failure to allege the specific contractual provisions interfered with by Wang. (Defs.' Moving Br. 16) (citing *Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-16366, 2022 WL 1134851, at *4 (D.N.J. Apr. 18, 2022)). Defendants maintain that Plaintiff only asserts conclusory allegations that Wang "materially interfered with Plaintiff's rights" (Compl. ¶ 72), and that this allegation is "plainly insufficient as a matter of law." (*Id.*) Further, Defendants contend that dismissal is warranted because Plaintiff did not allege that Wang maliciously interfered with the CEL Agreement. (*Id.* at 16-17.)

To set forth a tortious interference with contract claim, a plaintiff must adequately allege: "(1) an existing contractual relationship; (2) the defendant intentionally interfered with that contractual relationship; (3) the interference was undertaken with malice; and (4) damages resulting from the interference." *Watkins v. Bai Brands, LLC*, No. 17-2715, 2018 WL 999677, at

*6 (D.N.J. Feb. 20, 2018) (citing *Angrisani v. Cap. Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006)).

Here, the Court finds that Plaintiff has not sufficiently pled a claim for tortious interference with contract based on his failure to identify a specific contractual provision that was interfered with by Wang. For example, in *Hotaling & Co., LLC*, the above-cited case relied on by Defendants, the district court dismissed a defendant's counterclaim for tortious interference with contract because the defendant failed to allege the specific contractual provision interfered with by the plaintiff. The court reasoned that the defendant did "not adequately allege[] that [the] [p]laintiffs' conduct resulted in the loss or breach of its contract with [a third-party]." *Hotaling & Co., LLC*, 2022 WL 1134851, at *5. In that regard, the court noted that the defendant "merely claims that [the] [p]laintiffs caused 'disruption' of its contract," and that the defendant failed to "detail the contractual provisions that were impacted *or* the resulting breach or loss." *Id.* (emphasis added). Thus, the court found that, without more, the defendant's "vague allegation of contract 'disruption' [was] insufficient." *Id.*

Plaintiff's Complaint, here, fares no better. The Complaint alleges simply that Plaintiff entered into the CEL Agreement, which constitutes a valid and binding contract, with Wang and CEL, and that pursuant to the CEL Agreement, Wang and CEL granted Plaintiff options. (Compl. ¶¶ 68-69.) Plaintiff further alleges that Wang "materially interfered with Plaintiff's rights granted to him pursuant to the [CEL Agreement] by, among other things, refusing to include Plaintiff's vested [CEL Agreement] Options among the securities converted into NBG/CENN stock in the Transaction and falsely representing that Plaintiff's [CEL Agreement] Options would be treated the same as all other CAG options." (*Id.* ¶ 72.) As a result of these actions, Plaintiff alleges that he suffered, and will continue to suffer, significant damages in an amount exceeding $18 million. (*Id.*

¶ 74.) In that regard, the Complaint never identifies a specific provision of the CEL Agreement that supposedly protected Plaintiff's options in the nature claimed in this lawsuit. Rather, the Complaint only generally, and in conclusory fashion, alleges that Wang interfered with unidentified and ambiguous "rights" granted to Plaintiff under the CEL Agreement. (*Id.* ¶ 72.) That is insufficient to sustain a claim for tortious interference with contract. The Court, accordingly, dismisses Count V without prejudice.

### 2. *Fraud and Negligent Misrepresentation (Counts VI and VIII)*

In Counts VI and VIII, Plaintiff asserts claims of fraud against Wang and negligent misrepresentation against Wang and CENN. Plaintiff alleges that these defendants "misrepresented that Plaintiff's Options would be converted in the Transaction into the right to purchase NBG/CENN stock," and that such misrepresentations were made "knowing they were false or with a reckless indifference for the truth." (Compl. ¶¶ 77-78.) According to Plaintiff, he reasonably relied on the purported misrepresentations, to his detriment, and only learned that Defendants made misrepresentations and/or false statements after the Transaction closed. (*Id.* ¶¶ 81-82.)

Defendants submit that these claims should be dismissed because an integration and "no oral modifications" clause in the Employment Agreement "blocks any attempt by Plaintiff to rely on oral assurances of option protection[.]" (Defs.' Moving Br. 13.) In response, Plaintiff contends that the CLE Agreement does not contain an integration and no oral modifications clause, and to the extent that such a clause does exist in the Employment Agreement, it does not bar Plaintiff's claims. (Pl.'s Opp'n Br. 26-28.) Moreover, Defendants contend that Counts VI and VIII should be dismissed because (1) Plaintiff has not alleged that Wang or CENN owed him an independent duty of care to protect his options; (2) Plaintiff does not identify any misrepresentations made by Wang

or CENN; (3) Plaintiff does not allege that any purported misrepresentations were false when made; and (4) Plaintiff has not pled his fraud-based claims with the required particularity. (Defs.' Moving Br. 17-21.)

To state a claim of common-law fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citation omitted). Similarly, to establish a claim for negligent misrepresentation, a plaintiff must adequately allege that "(1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." *Eberhart v. LG Elecs. USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016) (citation omitted). The heightened pleading requirements of Rule 9(b) apply to these fraud-based claims. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011).

As a threshold issue, the Court notes that the Complaint contains no allegations of any material misrepresentations or false statements made directly by Wang or CENN—let alone allegations pled with enough particularity to satisfy Rule 9(b). For example, Plaintiff merely alleges that CAG's CEO He told him on September 26, September 27, October 2, November 14, November 15, and December 7, 2021, "that [Plaintiff's] Options had been listed among the options to be converted in the official Transaction documents." (Compl. ¶ 30.) Likewise, Plaintiff alleges that he "was provided with similar representations" by CAG's EVP Chow on September 28, October 3, October 28, November 15, and December 9, 2021. (*Id.*) While the Court acknowledges that Plaintiff alleged several specific dates that the purported misrepresentations were

communicated and the identities of the communicators, Plaintiff fails to sufficiently plead any of the Rule 9(b) particularity requirements *as to Wang and CENN*. Without any allegations of direct conduct, *i.e.*, material misrepresentations, by Wang or CENN, the Court finds that Plaintiff did not sufficiently plead claims of fraud and negligent misrepresentation (Counts VI and VII) under Rule 9(b). As a result, these claims are dismissed without prejudice.

### 3.  *Promissory Estoppel (Count VII)*

In Count VII, Plaintiff asserts a claim of promissory estoppel against Wang. Similar to Plaintiff's claims for fraud and negligent misrepresentation, Plaintiff's promissory estoppel claim is based on (i) Plaintiff's purported reliance on promises that he would receive stock options as a condition of his employment, (ii) Plaintiff's purported reliance on statements that the Employment Agreement options would convert into CENN options upon the NBG Transaction, and (iii) Plaintiff's alleged understanding that such statements also applied to his CAG options granted pursuant to the CEL Agreement. (Compl. ¶¶ 84, 86.) Defendants contend, however, that this claim should be dismissed, in part, because Plaintiff fails to allege a clear and definite promise regarding the conversion of his options in the Transaction. (Defs.' Moving Br. 22-24.)

To state a claim for promissory estoppel in New Jersey, a plaintiff must adequately allege "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros. Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008) (citation omitted). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) (quoting Restatement (Second) of Contracts § 5 cmt. a (1979)). Moreover, and critical here, "'the *sine qua non*' of a promissory estoppel claim is a 'clear and definite promise.'" *Zarrilli v.*

*John Hancock Life Ins. Co.*, 231 F. App'x 122, 124 (3d Cir. 2007) (citation omitted). As a matter of law, a promissory estoppel claim may not be based on a promise subject to change, *Mejias v. American Boychoir School*, No. 11-0562, 2011 WL 3235711, at *5 (D.N.J. July 27, 2011), or even a "truthful statement as to the present intention of a party with regard to his future acts," *In re Phillips Petroleum Securities Litigation*, 881 F.2d 1236, 1250 (3d Cir. 1989) (citation omitted).

Here, the Court finds that Plaintiff fails to allege a clear and definite promise regarding the conversion of his options in the Transaction. As the Third Circuit has held, the "reliance upon a mere expression of future intention cannot be 'reasonable,' because such expressions do not constitute a sufficiently definite promise." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d at 1250 (quoting *Santoni v. Fed. Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir. 1982)). "'[A] truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built. The intention is subject to change.'" *Derry Fin. N.V. v. Christiana Cos., Inc.*, 616 F. Supp. 544, 550 (D. Del.1985) (quoting *Metro. Life Ins. Co. v. Childs Co.*, 230 N.Y. 285, 294 (1921)), *aff'd*, 797 F.2d 1210 (3d Cir. 1986). According to Plaintiff, "[u]pon learning of the Transaction, Defendants represented to Plaintiff on several occasions that Plaintiff's Options *would be* converted into the right to purchase NBG/CENN stock in the Transaction and/or treated *parri passu* with other vested CAG options." (Compl. ¶ 86) (emphasis added). Indeed, while use of the phrase "would be" suggests the lack of a definite promise, the Court also finds that the Complaint lacks any allegations demonstrating that the representations made to Plaintiff were false at the time. Accordingly, the Court dismisses Plaintiff's claim for promissory estoppel (Count VII) without prejudice.

### 4. *Unjust Enrichment and Conversion (Counts IX-XI)*

Lastly, Defendants move to dismiss Counts IX, X, and XI, which assert claims of unjust enrichment against Wang and CENN (Counts IX and X) and conversion against Wang and CENN (Count XI).

With respect to unjust enrichment, to succeed on such a claim under New Jersey law, a plaintiff must prove "'(1) that the defendant . . . received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth.*, 677 A.2d at 752). "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that the plaintiff allege a sufficiently *direct relationship* with the defendant to support the claim." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (emphasis added) (citation and internal quotation marks omitted).

Here, Plaintiff does not allege any direct relationship with Wang or CENN. Rather, the only direct relationship alleged is between Plaintiff and CAG through the Employment Agreement and Plaintiff and CEL through the CEL Agreement.[10] Thus, as a matter of law, Plaintiff's unjust enrichment claims in Counts IX and X must be dismissed.

Lastly, "[u]nder New Jersey law, '[c]onversion is essentially the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property.'" *Rickerson v. Pinnacle Foods Inc.*, No. 17-4469, 2018 WL 1704788, at *3 (D.N.J. Apr. 9, 2018) (second alteration in original) (quoting *Peloro v. United States*, 488 F.3d 163, 173-74 (3d Cir. 2007)). The elements of conversion are "(1) the existence of property, (2) the

---

[10] For clarity, the Court notes that no unjust enrichment claim is asserted against CAG.

right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *City of Atl. City v. Zemurray St. Cap., LLC*, No. 14-5169, 2017 WL 6638203, at *17 (D.N.J. Dec. 29, 2017) (citation omitted).

Here, the Court finds that Plaintiff has not sufficiently alleged a claim for conversion because, as discussed in detail, *supra*, the Complaint does not allege any specific actionable conduct on the part of Wang or CENN. Thus, Count XI is dismissed.

## IV.    **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' motion to dismiss. As to the claims dismissed herein, the Court will grant Plaintiff leave to amend to correct the deficiencies identified in this Memorandum Opinion in any amended complaint. The Court will enter an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
