<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

XIONGJIAN CHEN,

                Plaintiff,

                v.

PETER ZUGUANG WANG, *et al.*,

                Defendants.

Civil Action No. 22-4708 (MAS) (JBD)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court on Defendants Peter Zuguang Wang ("Wang"), Cenntro Automotive Group Limited, a Cayman Islands corporation ("CAG"), Cenntro Enterprise Limited, a Hong Kong company ("CEL"), Cenntro Automotive Corporation, a Delaware corporation ("CAC"), and Cenntro Electric Group Limited f/k/a Naked Brand Group Limited's, an Australian corporation ("CENN") (collectively, "Defendants") Motion to Dismiss Plaintiff Xiongjian Chen's ("Plaintiff") Amended Complaint. (ECF No. 32.) Plaintiff opposed (ECF No. 41), and Defendants replied (ECF No. 46).

      The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

## I.    **BACKGROUND**[1]

### A.    **Factual Background**

The Court, cognizant it writes for the benefit of parties familiar with this matter, adopts and incorporates the factual background set forth in the Court's Memorandum Opinion dated April 30, 2023 ("April 2023 Opinion"), dismissing Plaintiff's complaint. (Apr. Op. 2-6, ECF No. 25.) In its Opinion today, the Court focuses only on the additional allegations brought in Plaintiff's Amended Complaint and whether such additions render Plaintiff's Amended Complaint capable of surviving Defendants' Motion to Dismiss.[2]

For the sake of clarity, the Court reiterates the roles of the parties involved. Wang is the former Chairman and Chief Executive Officer ("CEO") of CAG, a designer and manufacturer of electric vehicles, and he is currently the owner and Chairman of CEL, CAG's controlling stockholder. (Am. Compl. ¶¶ 10-11, 15, ECF No. 27.) CAG designed and manufactured electric vehicles in the United States through its wholly-owned, New Jersey-based, operating subsidiary, CAC. (*Id.* ¶¶ 11, 13.) In 2021, CAG sold its operating subsidiaries to Naked Brand Group Limited ("NBG"), a publicly traded Australian clothier, in exchange for NBG stock (the "Transaction"). (*See id.* ¶¶ 41-42.) NBG also changed its name to CENN. (*Id.* ¶ 42.) Wang serves as CENN's Chairman and CEO. (*Id.*) CEL holds a majority of seats on CENN's Board of Directors. (*Id.*)

Plaintiff is the former Chief Operating Officer ("COO") of CAG. (*Id.* ¶ 10, Ex. A.) Plaintiff served in that position for approximately three and a half years until his resignation on February

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] While the Court adopts the entirety of the April 2023 Opinion's background, the Court changes the citations of relevant facts to comport with Plaintiff's Amended Complaint.

28, 2021. (Am. Compl. ¶ 37.) Thereafter, he transitioned to the role of a consultant to CAG, serving in that capacity until his termination on September 26, 2021. (*Id.* ¶ 10.)

In essence, the crux of the dispute centers around: (1) Plaintiff's employment agreement with CAG as COO ("Employment Agreement") that granted him rights to certain CAG options (the "CAG Options") (*id.* ¶ 2); (2) Plaintiff's agreement with CEL that sets forth the terms and conditions by which Wang and CEL ("CEL Agreement") granted him rights to certain CAG Options held by Wang and/or CEL (the "CEL Options" and together with the CAG Options, the "Options") (*id.*); and (3) the Transaction, where CAG sold its operating subsidiaries to NBG in exchange for NBG stock (collectively, the "Agreements") (*id.* ¶ 5). Plaintiff claims that Defendants interfered with the Agreements, which deprived him of his right to have his Options converted to NBG stock in the Transaction. (*Id.* ¶ 6.) And, as a result, Plaintiff lost the opportunity to profit from the Transaction. (*Id.*)

### B. The Court's April 2023 Opinion

In the April 2023 Opinion, the Court dismissed Plaintiff's complaint in its entirety pursuant to Defendants' Motion to Dismiss. (*See generally* Apr. Op.)

Plaintiff's original complaint alleged the following eleven causes of action: (1) breach of the Employment Agreement against Wang and CAG; (2) breach of the CEL Agreement against Wang and CEL; (3) breach of the implied covenant of good faith and fair dealing in connection with the Employment Agreement against Wang and CAG; (4) breach of the implied covenant of good faith and fair dealing in connection with the CEL Agreement against Wang and CEL; (5) tortious interference with the CEL Agreement against Wang and CAG; (6) fraud against Wang, CAG, and CEL; (7) promissory estoppel against Wang, CAG, and CEL; (8) negligent misrepresentation against Wang, CAG, CEL, and CENN; (9) unjust enrichment against Wang and

3

CEL; (10) unjust enrichment against CENN; and (11) conversion against Wang, CAG, CEL, and CENN. (*See generally* Compl., ECF No. 1.)

> 1.    *The Court Lacked Personal Jurisdiction over CAG and CEL.*

To begin, the Court first found that Plaintiff failed to meet his burden to establish that this Court has—general or specific—personal jurisdiction over CAG and CEL. (Apr. Op. 10-16.) For general jurisdiction, the Court found that Plaintiff failed to demonstrate that CAG or CEL have "their principal places of business in New Jersey or have contacts so continuous and systematic to essentially render them 'at home' in New Jersey" as of July 2022. (*Id.* at 11-12.) For specific personal jurisdiction, the Court found that Plaintiff failed to show that "CAG and CEL have . . . purposefully availed themselves of the laws of New Jersey on Plaintiff's contract, tort, or quasi-contract claims." (*Id.* at 16.) Specifically, Plaintiff failed to plead that the Employment Agreement and CEL Agreement "were executed in, or had any other connection to New Jersey" (*id.* at 14) and failed to assert "jurisdictionally relevant facts pertaining to the Transaction or [the alleged misrepresentations]" (*id.* at 15-16). As such, the Court dismissed all claims against CAG and CEL because it lacked personal jurisdiction over them. (*Id.* at 16.)

> 2.    *Plaintiff's Complaint Lacked Sufficient Allegations as to Wang and CENN.*

The Court then turned to the merits. The Court dismissed all claims (Counts I-XI) against the remaining Defendants, Wang and CENN, for lack of sufficient factual allegations. (*Id.* at 17-28.)

The Court first dismissed Plaintiff's contractual claims (Counts I-IV) against Wang because Plaintiff failed to plead that Wang intended to bind himself individually under the Employment Agreement and CEL Agreement. (*Id.* at 17-18.) The Court then turned to Plaintiff's tort and quasi-contract claims (Counts V-XI). (*Id.* at 19-27.) In doing so, the Court first dismissed

Plaintiff's claim of tortious interference with the CEL Agreement (Count V) against Wang for failure to plead facts "identify[ing] a specific contractual provision that was interfered with by Wang." (*Id.* at 22.) Second, the Court dismissed Plaintiff's fraud claim (Counts VI) against Wang and negligent misrepresentation claims (Count VIII) against Wang and CENN for failure to allege any material misrepresentations or false statements made directly by Wang or CENN. (*Id.* at 23-25.) Third, the Court dismissed Plaintiff's promissory estoppel claim (Count VII) against Wang because "Plaintiff fail[ed] to allege a clear and definite promise regarding the conversion of his [O]ptions in the Transaction" and Plaintiff's complaint lacked "any allegations demonstrating that the representations made to Plaintiff were false at the time." (*Id.* at 26.) Fourth, the Court dismissed Plaintiff's unjust enrichment claims against Wang and CENN (Counts IX and X) because Plaintiff failed to allege a direct relationship with Wang or CENN. (*Id.* at 27.) Fifth and finally, the Court dismissed Plaintiff's conversion claims against Wang and CENN (Count XI) because Plaintiff failed to "sufficiently allege . . . any specific actionable conduct on the part of Wang or CENN." (*Id.* at 28.)

Despite granting Defendants' Motion to Dismiss, the Court provided Plaintiff the opportunity to clarify his pleadings and address the concerns the Court raised in its April 2023 Opinion. (Order 1-2, ECF No. 26.) On May 29, 2023, Plaintiff timely filed an Amended Complaint.[3] (Am. Compl., ECF No. 27.)

---

[3] Defendants filed a motion to strike Plaintiff's Amended Complaint, arguing that it exceeded the scope of what the Court permitted. (*See generally* ECF No. 33.) This Court, however, denied Defendants' motion and allowed Plaintiff's Amended Complaint to proceed as filed. (ECF No. 57.)

## C.    Changes in the Amended Complaint

Plaintiff's Amended Complaint contains two significant changes. (*See generally* Am. Compl.) While largely tracking the same essential theories of recovery put forth in the original complaint, Plaintiff's Amended Complaint adds a new defendant and asserts two entirely new causes of action for tortious interference with prospective advantage and civil conspiracy.

First, Plaintiff adds CAC as a defendant. (*Id.* ¶ 13.) As a newly added defendant, Plaintiff alleges eight claims against CAC based solely on theories of alter ego and agency.[4] (*See generally id.*) In doing so, Plaintiff also alleges that CAG and CEL are alter egos of CAC and Wang, respectively. (*Id.* ¶¶ 22-24.) Plaintiff further alleges that since CAG and CEL are alter egos of CAC and Wang, respectively, personal jurisdiction over CAC and Wang can be imputed to CAG and CEL. (*Id.*) In addition to allegations of alter ego, Plaintiff alleges that CAC is the agent of CAG, subjecting CAC to liability. (*See generally id.*) Next, Plaintiff alleges two entirely new causes of action. (*Id.*) Specifically, Plaintiff alleges claims of tortious interference with prospective economic advantage against Wang, CEL, CAG, and CAC (*id.* ¶¶ 92-96) (Count V)[5] and civil conspiracy against Defendants (*id.* ¶¶ 134-138) (Count XII).

---

[4] Using theories of alter ego and agency of CAG, Plaintiff asserts claims of breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count III), tortious interference with prospective economic advantage (Count V), fraud (Count VI), promissory estoppel (Count VII), negligent misrepresentation (Count VIII), conversion (Count XI), and civil conspiracy (Count XII) against CAC. (*See generally* Am. Compl.)

[5] Plaintiff's original complaint asserted a claim of tortious interference with a *contract* against Wang and CAC, but his Amended Complaint replaced that claim with tortious interference with *prospective economic advantage* against Wang, CEL, and CAG. (*Compare* Compl. ¶ 72 ("[Wang and CAG] interfered with Plaintiff's rights granted to him pursuant to the . . . [] CEL Agreement."), *with* Am. Compl. ¶ 93 ("[Wang, CEL, and CAG] tortiously interfered with the value Plaintiff could expect to realize from the . . . [] CEL Agreement Options.").)

The Court now considers whether these revised and additional allegations against Defendants can survive Defendants' renewed Motion to Dismiss.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(2)[6]

Rule 12(b)(2) "provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant." *Dzielak v. Whirlpool Corp.*, No. 12-89, 2018 WL 6985013, at *2 (D.N.J. Dec. 21, 2018), *report and recommendation adopted*, No. 12-89, 2019 WL 145608 (D.N.J. Jan. 8, 2019). "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)).

The Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by New Jersey's long-arm statute. *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221 (D.N.J. 2020). New Jersey's long-arm statute permits the same protections afforded by the Due Process Clause under the Fourteenth Amendment of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). The Court, therefore, may exercise personal jurisdiction so long as the defendant maintains "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[6] Unless otherwise stated, all references to "Rule" or Rules" refer to the Federal Rules of Civil Procedure.

Although a plaintiff bears the burden of showing that personal jurisdiction exists, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citation omitted). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

**B.**   **Rule 12(b)(6)**

Rule 12(b)(6) "provides that a court may dismiss a claim for 'failure to state a claim upon which relief can be granted.'" Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-07213, 2022 WL

909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). While Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips*, 515 F.3d at 231 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

III.    **DISCUSSION**[7]

      Defendants argue that Plaintiff's Amended Complaint should be dismissed in its entirety as Plaintiff failed to cure the deficiencies outlined by the Court in the April 2023 Opinion. (Defs.' Moving Br. 2, ECF No. 32-1.)

---

[7] The Court incorporates its discussion from the April 2023 Opinion here by reference. (Apr. Op. 10-28.)

### A.   Personal Jurisdiction Over CAG and CEL[8]

Because jurisdiction is a threshold question, the Court will address it first before considering Defendants' arguments related to Plaintiff's specific claims.

In its April 2023 Opinion, the Court found that Plaintiff failed to establish that this Court has general or specific personal jurisdiction over CAG and CEL. (Apr. Op. 10-16.) Now, to establish personal jurisdiction over CAG and CEL, Plaintiff provides: (1) Securities and Exchange Commission ("SEC") filings submitted by CENN listing New Jersey locations, dated November 5 and December 21, 2021, respectively (Chen Decl. Exs. I, M, ECF Nos. 41-1, 41-14); (2) two of CAG's employment contracts with employees listing a New Jersey address, dated June 1 and 28, 2021, respectively (*id.* Exs. E, F, ECF Nos. 41-6, 41-7); and (3) CAG's engagement letter with a New York law firm, dated December 4, 2019 listing a New Jersey address for CAG (*id.* Ex. C, ECF No. 41-4). Plaintiff also maintains, in the alternative, that CAC[9] is the alter ego and agent to CAG, and Wang is the alter ego to CEL, making both CAG and CEL subject to personal jurisdiction in this Court. (Pl.'s Opp'n Br. 14-19, ECF No. 41.)

A court is authorized to exercise two types of personal jurisdiction: general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). General jurisdiction applies when an individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely."

---

[8] New Jersey substantive law governs the alter ego personal jurisdiction analysis as this Court sits in diversity. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988).

[9] It is undisputed that this Court has personal jurisdiction over CAC.

*Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Specific jurisdiction, on the other hand, allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

       *1.*     *General Jurisdiction*

     The Court first considers whether Plaintiff has met his burden to establish general jurisdiction over CAG and CEL.

     Defendants contend that Plaintiff fails to meet its burden to establish general personal jurisdiction because Plaintiff fails to demonstrate that CAG's and CEL's principal places of business were in New Jersey as of July 2022 or that CAG or CEL have contacts so continuously and systematically rendering them "at home" in New Jersey. (Defs.' Moving Br. 8-9.)

     As with Plaintiff's original complaint, Plaintiff admits that CAG is incorporated under the laws of the Cayman Islands, and CEL is incorporated under the laws of Hong Kong. (Am. Compl. ¶¶ 11, 15.) Thus, to establish general jurisdiction, Plaintiff must demonstrate that CAG and CEL have their principal places of business in New Jersey or have contacts so continuous and systematic to essentially render them "at home" in New Jersey. *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014). A corporation's principal place of business is determined as of the date the action was commenced for purposes of general jurisdiction. *See, e.g., In re Gerber Prods. Co. Baby Food Litig.*, No. 21-1977, 2021 WL 4148107, at *2 (D.N.J. Sept. 13, 2021).

Here, the Court finds that Plaintiff fails to meet his burden in establishing that this Court has general personal jurisdiction over CAG or CEL. Plaintiff fails to show that CAG's or CEL's principal place of business was in New Jersey or that they have other contacts in New Jersey as of July 2022, when Plaintiff initiated this action. The Court, however, acknowledges the due diligence Plaintiff exercised in obtaining SEC forms, employment agreements, and CAG's engagement letter with a New York law firm. None of these documentary sources, however, individually or taken together, are sufficient to show that CAG and CEL maintain such a robust presence in New Jersey as of July 2022 that they can fairly be considered "at home" here. Thus, neither CAG nor CEL is subject to general personal jurisdiction in this Court. *See Daimler AG*, 571 U.S. at 137.

### 2.    *Specific Jurisdiction*

Having failed to establish general personal jurisdiction over CAG and CEL, the Court now considers whether Plaintiff can show that this Court has specific personal jurisdiction over CAG and CEL.

To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over defendants," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Plaintiff alleges contractual, quasi-contractual, and tort claims against CAG and CEL. Because a specific personal jurisdiction analysis is claim-specific, the Court typically analyzes the contract, quasi-contract, and tort claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 255-60 (3d Cir. 2001). Claim-specific analysis, however, is not required where the claims at issue factually overlap. *O'Connor*, 496 F.3d at 318 n.3; *see Remick*, 238 F.3d at 255 (providing that it is not always necessary to conduct claim-specific analysis in every case involving multiple claims, however, the district court should

have done so where claims consisted of breach of contract, defamation, misappropriation, and intentional interference); *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147-150 (3d Cir. 1992) (examining the issue of personal jurisdiction as to plaintiff's fraud claim separately from plaintiff's breach of fiduciary duty claim where the claims at issue did not factually overlap).

Here, Plaintiff's contract, quasi-contract, and tort claims stem from the same underlying factual circumstances—namely, the communications and representations underlying the performance of the Employment Agreement and CEL Agreement, including the subsequent failure to include Plaintiff's Options among the CAG Options converted into the right to purchase NBG/CENN stock in the Transaction—and the parties have likewise addressed the issue of specific personal jurisdiction without differentiating between specific claims. The Court, therefore, will not employ a claim-specific approach to discern whether it may properly exercise specific personal jurisdiction over CAG and CEL. *See Grant Indus., Inc. v. Isaacman*, No. 21-13094, 2022 WL 2358422, at *10 n.12, (D.N.J. June 30, 2022) (analyzing, *inter alia*, breach of contract, misappropriation of confidential information and trade secrets, fraud, and conversion claims together because they arose from the "same sequence of events and factual allegations"); *Beemac, Inc. v. Republic Steel*, No. 20-1458, 2021 WL 2018681, at *4 (W.D. Pa. May 20, 2021) (analyzing breach of contract, unjust enrichment, account stated, fraud in the inducement, and negligent misrepresentation claims together because those claims stemmed from same communications and representations underlying creation and performance of an alleged contract and subsequent nonpayment).

Because the Supreme Court has instructed that in assessing personal jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder v. Jones*, 465 U.S. 783, 790 (1984), the Court will separately assess CAG's and CEL's contacts with New Jersey.

13

       *a.*    *Purposeful Availment*

Turning to the first requirement of specific personal jurisdiction, the Court must be satisfied that CAG and CEL purposefully directed their conduct or activities to New Jersey.

Previously, this Court found that Plaintiff failed to establish that CAG and CEL purposely availed themselves of New Jersey because Plaintiff failed to allege that the Agreements were negotiated or executed in New Jersey or that any alleged misrepresentations were made or received in New Jersey. (Apr. Op. 13-16.)

Plaintiff now argues that CAG and CEL purposefully availed themselves of New Jersey based upon the Employment Agreement and CEL Agreement and because CAG's and CEL's "day-to-day operations . . . primarily took place in New Jersey." (Pl.'s Opp'n Br. 14, 20.) More specifically, Plaintiff asserts that CAG purposefully availed itself of conducting business in New Jersey because of the Employment Agreement between Plaintiff and CAG. (*Id.* at 14.) And, as COO of CAG, Plaintiff oversaw the day-to-day operations of CAG, which primarily took place in New Jersey. (*Id.*) Relatedly, with respect to CEL, Plaintiff argues that CEL purposefully availed itself of New Jersey due to the CEL Agreement, which was intended to compensate Plaintiff for overseeing CAG's day-to-day operations in his role as COO, which took place primarily in New Jersey, where CAC's headquarters and two of CENN's research and development facilities were located. (*Id.* at 20.)

Defendants, on the other hand, argue that Plaintiff fails to establish that this Court has specific personal jurisdiction over CAG and CEL because "Plaintiff . . . does not allege that the Employment Agreement or CEL [Agreement] 'were executed in, or had any other connection to, New Jersey,' or that 'performance of the contracts or breach of the contracts occurred in New Jersey.'" (Defs.' Moving Br. 3.) Specifically, Defendants contend that the Amended Complaint

does not contain allegations "that the Employment Agreement and CEL [Agreement] 'were executed in, or had any other connection to, New Jersey,'" and Plaintiff does not meet his burden by submitting actual proofs. (*Id.*) Defendants further maintain that Plaintiff's assertion that CAG's and CEL's "'day-to-day operations . . . primarily took place in New Jersey' . . . are both conclusory and irrelevant to the specific jurisdiction inquiry." (Defs.' Reply Br. 6, ECF No. 46.) Lastly, Defendants maintain that Plaintiff's allegations lack "jurisdictionally relevant facts" pertaining to the . . . Transaction or, as to the alleged misrepresentations by CAG's Chief Financial Officer ("CFO"), David Ming He ("CFO He"), and CAG's Executive Vice President ("EVP"), Kelly Chow ("EVP Chow"), "where those misrepresentations were made or where Plaintiff received them." (Defs.' Moving Br. 3.)

To establish purposeful availment for specific personal jurisdiction, "[t]he plaintiff must show that the defendant took 'some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436 (D.N.J. 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). "[Plaintiff] must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

In contract disputes, such as this one, non-resident defendants deliberately target a forum when, among other activities, they "engage . . . in significant activities within [the] State" or create "'continuing obligations' [with] residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (citation omitted). Further, "[i]n contract cases, courts should inquire whether

15

the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co.*, 270 F.3d at 150 (citing *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)); *Trinity Packaging Supply, LLC v. Countrywide Pallet, Inc.*, No. 18-16115, 2019 WL 2611101, at *3 (D.N.J. June 26, 2019) ("Such [jurisdictional] contacts 'may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties.'") ds "Actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination." *Gen. Elec. Co.*, 270 F.3d at 150 (citation omitted). In sum, the case law makes clear that "a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum . . . .'" *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478). Rather, "in contract claims[,] [courts] analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper." *Miller Yacht Sales*, 384 F.3d at 99.

Here, the Court finds that Plaintiff fails to establish that CAG and CEL purposefully availed themselves of the privilege of conducting business in New Jersey. Neither the Amended Complaint nor Plaintiff's proofs submitted in opposition to Defendants' Motion to Dismiss show that the contracts underlying this dispute—the Employment Agreement and the CEL Agreement—were executed in, or had any other connection to, New Jersey. Plaintiff fails to rebut any of the statements made in the Wang Declaration concerning CAG, CEL, and the Transaction. In particular, in the Wang Declaration, Wang certifies that neither CAG nor CEL is authorized to do business in New Jersey. (Decl. of Peter Wang in Supp. of Defs.' Motion to Dismiss ("Wang Decl.") ¶¶ 6, 17, ECF No. 32-5.) Wang also certifies that neither CAG nor CEL has any offices, employees,

bank accounts, or operations of any kind in New Jersey. (*Id.*) Further, according to Wang, neither CAG nor CEL has a registered agent for service of process in New Jersey, nor are they registered as foreign corporations with the New Jersey Division of Revenue and Enterprise Services. (*Id.* ¶¶ 6-7, 17-18.)

Contrary to Plaintiff's assertion that he oversaw the day-to-day operations of CAG primarily from New Jersey, Wang certifies that "Plaintiff carried out his duties as [COO] of CAG in China, and was not required to travel to New Jersey." (*Id.* ¶ 10.) Wang further declares that Plaintiff entered into the Employment Agreement with CAG, dated July 15, 2017, which Wang "negotiated and signed in [his] capacity as [CEO] of CAG, and not in [his] individual capacity." (*Id.* ¶ 8.) Wang also declares that "[n]either Plaintiff nor I negotiated or signed the Employment Agreement in New Jersey." (*Id.*) With respect to the CEL Agreement, Wang also certifies that it was signed in his "capacity as the sole director of CEL," was "not negotiated in New Jersey," "not execute[d] [. . .] in New Jersey," and "Plaintiff did not affix his signature" in New Jersey. (*Id.* ¶¶ 20-21.) Other than a blanket statement that Plaintiff's employment took place primarily in New Jersey, Plaintiff points to no proof to support this proposition. Plaintiff's jurisdictional evidence, coupled with Plaintiff's vague jurisdictional allegations, makes this Court unable to conclude that it has specific jurisdiction over either CAG or CEL due to the Employment Agreement or the CEL Agreement. *See Rehrer v. Atiyeh*, No. 14-8031, 2015 WL 5680104, at *1 (D.N.J. Sept. 25, 2015) (explaining that once defendants submit sworn evidence supporting dismissal for lack of jurisdiction, the burden shifts to plaintiff to "establish[] jurisdictional facts through sworn affidavits or other competent evidence; reliance on the bare pleadings is not enough").

To the extent that Plaintiff urges that its breach of contract claim turns on the Transaction and certain alleged misrepresentations by CFO He and EVP Chow related to the conversion of

Plaintiff's Options (*see* Chen Decl. ¶ 7 ("the [T]ransaction . . . serves as the basis for my damages in this case"), ECF No. 21-1 Plaintiff has not presented any new jurisdictionally relevant facts pertaining to the Transaction or those statements, and it is undisputed he has no personal knowledge of the Transaction.[10] (*See* Am Compl. ¶ 26; Chen Decl. ¶¶ 2, 8, 15) (relying on information contained in public filings). And, as it pertains to the misrepresentations purportedly made by CFO He and EVP Chow (Am. Compl. ¶ 45), Plaintiff fails to rebut Defendants' proof that the alleged misrepresentations by CFO He and EVP Chow were neither made, nor received, in New Jersey." (*See* Wang Decl. ¶¶ 10-12, 14.) As such, Plaintiff has failed to establish jurisdictional facts through sworn affidavits or other competent evidence that the purported misrepresentations concerning the Transaction were made or received in New Jersey.

The Court, therefore, finds that Plaintiff has failed to meet his burden in establishing that the Agreements were negotiated or executed in New Jersey or that any alleged misrepresentations were made or received in New Jersey through sufficient proof. For these reasons, the Court finds that CAG and CEL have not purposefully availed themselves of the laws of New Jersey with respect to Plaintiff's contract, quasi-contract, and tort claims.

---

[10] For tort claims like tortious interference, fraud, negligent misrepresentation, and civil conspiracy, the Court may exercise personal jurisdiction when the *Calder* effects test is satisfied. *See Calder*, 465 U.S. at 783; *Marten*, 499 F.3d at 297. Under this test, a plaintiff may demonstrate specific personal jurisdiction if he shows: (1) "[t]he defendant committed an intentional tort; (2) "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort"; and (3) "[t]he defendant expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). Plaintiff, however, does not allege personal jurisdiction over CAG or CEL under the effects test set forth in *Calder*, thus, Plaintiff waives this argument.

*b.*    *Remaining Elements*

Because all three elements of the test must be met to establish specific personal jurisdiction, the Court need not consider the remaining two elements. *See O'Connor*, 496 F.3d at 317. The Court, accordingly, finds that Plaintiff fails to meet his burden to show that this Court has specific personal jurisdiction over CAG and CEL. *See Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) ("[B]are pleadings alone are insufficient to withstand a motion to dismiss for lack of personal jurisdiction.") (internal quotation marks omitted).

*3.*    *Alter Ego Jurisdiction*

Plaintiff's Amended Complaint advances a new theory in an effort to obtain personal jurisdiction over CAG and CEL. (*See generally* Am. Compl.) Using the alter ego theory of jurisdiction, Plaintiff seeks to establish personal jurisdiction: (1) over CAG through CAC, CAG's former subsidiary, and (2) over CEL through Wang.[11] (*See id.* ¶ 23 ("CAG is at home in the State of New Jersey given its alter ego entity and agent, CAC, is headquartered there."); *id.* ¶ 24 ("This Court has personal jurisdiction over . . . CEL because . . . [t]here is no legal distinction between . . . Wang and CEL[,]" as "CEL is legally the alter ego of . . . Wang.")). Plaintiff alleges that "Wang

---

[11] Plaintiff also alleges that the agency relationship between CAC and CAG is a sufficient basis to impute the Court's general jurisdiction over CAC to CAG. (*See generally* Am. Compl.) The Supreme Court of the United States rejected the agency theory as a means of exercising jurisdiction over foreign defendants, concluding that the "agency theory . . . appears to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction.'" *Daimler*, 571 U.S. at 136 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011); *see also Flynn v. Hovensa, LLC*, No. 14-43, 2014 WL 3375238, at *5 (W.D. Pa. July 3, 2014) ("[T]he *Daimler* Court rejected the use of the 'agency' theory to exercise general personal jurisdiction over a foreign corporation based on unrelated contacts of its subsidiary."). The Court, therefore, finds that to the extent an agency relationship exists between CAG and CAC, it is an insufficient basis for this Court to impute the contacts of CAC to CAG for personal jurisdiction.

made the majority, if not all, of [the] relevant corporate decisions" for CAG and CEL from New Jersey. (*Id.* ¶ 19.)

There is no clear approach to determining if a non-resident corporation is subject to jurisdiction in the forum where its subsidiary or distributor is located. *See Daimler AG*, 571 U.S. at 136. The Supreme Court has held that even if a subsidiary is "at home" in the forum, its parent is not automatically and equally subject to general jurisdiction there. *Id.* at 136-37. Put differently, "the 'use of a subsidiary does not necessarily subject the parent corporation' to [personal] jurisdiction" where the subsidiary is located. *In re Bulk [Extruded] Graphite Prods. Antitrust Litig.*, No. 02-6030, 2004 WL 7338471, at *5 (D.N.J. Oct. 28, 2004) (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925)). The Third Circuit Court of Appeals has held, however, that "if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citations omitted). But even where a subsidiary corporation may have sufficient contacts with the forum state to establish personal jurisdiction, a plaintiff must show "more than mere ownership" in order to impute those contacts to the parent company. *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004); *Pfundstein v. Omnicom Grp., Inc.*, 666 A.2d 1013, 1016 (N.J. Super. Ct. App. Div. 1995). "The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that 'the independence of the separate corporate entities was disregarded.'" *Fisher v. Teva PFC SRL*, 212 F. App'x 72, 76 (3d Cir. 2006) (quoting *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 806 (3d Cir. 1981)). This alter ego theory of personal jurisdiction derives from

New Jersey's veil-piercing doctrine, requiring the jurisdiction-proponent to show the following two elements:

> (1) the subsidiary was an alter ego or the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent and (2) the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise circumvent the law.

*Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4841610, at *4 (D.N.J. July 28, 2023) (citation and quotation marks omitted); *see also Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 392 (D. Del. 2012) ("[T]he alter ego theory of jurisdiction requires a finding similar to piercing the corporate veil."); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (explaining that piercing the corporate veil is reserved for circumstances where equity demands that the corporate form be disregarded, such as to "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime") (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967))). In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed *per se*, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. *State Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 158 (N.J. 1983) (citations omitted). Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil. *Id.*

In deciding whether a subsidiary was "merely a conduit for the parent," courts consider various factors—for instance, the "failure to observe corporate formalities, gross undercapitalization, absence of corporate records, siphoning of funds of the corporation, and the corporation's existence as a facade for the operations of the dominant stockholder." *Napoli v. First Choice Loan Servs., Inc.*, No. 19-7265, 2020 WL 39148, at *5 (D.N.J. Jan. 3, 2020) (quoting

*Westfield Ins. v. Interline Brands, Inc.*, No. 12-6775, 2013 WL 6816173, at *21 (D.N.J. Dec. 20, 2013)). Other factors include "who the subsidiary does business with other than the parent;" "the day-to-day involvement of the parent's directors, officers and personnel with the subsidiary;" and "the payment of the subsidiary's salaries and expenses by the parent." *Laverty v. Cox Enters., Inc.*, No. 18-1323, 2019 WL 351905, at *4 (D.N.J. Jan. 29, 2019) (quoting *Seltzer*, 339 F. Supp. 2d at 610); *see also Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525, at *8 (D.N.J. Apr. 25, 2018) (citing *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008), for additional factors). In considering whether the subsidiary was "merely a conduit for the parent," it is not uncommon for the parent and subsidiary to have overlapping boards of directors. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("[It is a] well-established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership.") (citations omitted). Understanding that there may be overlap between the board of directors of the parent company and subsidiary, courts have held that overlapping boards of directors cannot establish a parent company's domination or control of its subsidiary. *Leo v. Kerr-McGee*, No. 93-1107, 1996 WL 254054, at *6 (D.N.J. May 10, 1996) ("A significant degree of overlap between directors and officers of a parent and its subsidiary does not establish an alter ego relationship."). There is a general presumption "that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," so dual office holding alone is not sufficient to establish liability. *Bestfoods*, 524 U.S. at 69 (citation omitted). In all events, "for personal jurisdiction, the Court avoids any 'bright-line test.'" *See Rickman*, 538 F. Supp. 3d at 437 (quoting *O'Connor*, 496 F.3d at 320); *see also Miller Yacht Sales*, 384 F.3d at 100 (explaining that the Third Circuit has

not laid down a specific rule for personal jurisdiction and instead approaches each case individually, taking a realistic approach to analyzing a defendant's contacts with a forum).

<em>a.    Alter Ego Personal Jurisdiction Over CAG Through CAC</em>

First, the Court considers Plaintiff's argument that alter ego personal jurisdiction exists over CAG through CAC. Plaintiff alleges that "CAC was CAG's wholly owned operating subsidiary, had overlapping offices, officers and employees, and 'CAG and CAC . . . maintained no separate existence in any way, other than the fact that they were incorporated in different jurisdictions.'" (Pl.'s Opp'n Br. 15-16 (quoting Am. Compl. ¶¶ 22-23.).) Plaintiff also alleges that "all 'corporate, administrative, financial, HR/personnel, marketing, sales, advertising, quality assurance, and operational decisions of CAC were directed and controlled by CAG.'" (*Id.* at 16 (quoting Am. Compl. ¶¶ 22-23.).) Lastly, Plaintiff maintains that "CAG and CAC's finances were intermingled and controlled by the same people." (*Id.* at 23 (quoting Am. Compl. ¶ 23.).)

Here, the Court finds that Plaintiff has failed to provide sufficient evidence to establish alter ego jurisdiction over CAG through CAC. Once the defendants move to dismiss for lack of personal jurisdiction, "plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)). Specifically, Plaintiff fails to present any evidence demonstrating that CAG was "merely a conduit" for CAC—*i.e.*, among other things, failed to observe corporate formalities, gross undercapitalization, and the payment of salaries and expenses by CAC. Instead, Plaintiff argues, for example, that CAC was CAG's alter ego because they share executives (Am. Compl. ¶ 22), and employees (*id.* ¶ 23), because CAG had the authority to appoint CAC's officers and directors (*id.*), and because CAG "maintained the power over all of [CAC's] employees" (*id.*).

23

Plaintiff points to Wang's declaration, arguing that the companies have overlapping addresses and executive officers. (Pl.'s Opp'n Br. 16.) Wang's Declaration, however, suggests that CAG and CAC maintain independent operations, including administrative, financial, and human resources functions. (*See* Wang Decl. ¶ 26.) It also reflects that CAG and CAC have their own boards of directors, officers and employees, maintain their own books and records, and file their own tax returns. (*Id.*)

Regardless, even assuming a significant degree of overlap between directors and officers, the evidence Plaintiff identifies to this end, alone, is insufficient. *Leo*, 1996 WL 254054, at *6 ("A significant degree of overlap between directors and officers of a parent and its subsidiary does not establish an alter ego relationship."); *see Craig*, 843 F.2d at 150 ("It is patently clear . . . that in New Jersey even the exercise of significant control by the parent over the subsidiary will not suffice to pierce the corporate veil."); *see also Mikhail v. Amarin Corp.*, No. 23-1856, 2024 WL 863427, at *8 (D.N.J. Feb. 29, 2024) (explaining that sharing personnel and office space does not rise to the level of control that justifies veil-piercing for personal jurisdiction). As such, the Court finds that Plaintiff fails to meet his burden in establishing alter ego jurisdiction over CAG through CAC.

### b.    *Alter Ego Personal Jurisdiction Over CEL Through Wang*

Next, the Court considers Plaintiff's argument that alter ego jurisdiction exists over CEL through Wang. In other words, Plaintiff attempts to impute Wang's New Jersey contacts to CEL to establish alter ego personal jurisdiction. This Court, however, has rejected such a theory of "reverse alter ego personal jurisdiction." Specifically, this Court explained:

> Plaintiff asserts a theory in which the subsidiary corporation [CEL] would be subject to this Court's jurisdiction because the controlling parent [Wang] is allegedly subject to personal jurisdiction in New Jersey; in effect, Plaintiff asserts a reverse alter ego theory of

> jurisdiction. Plaintiff has not cited to a case applying New Jersey
> law where a court found jurisdiction over a subsidiary based on its
> jurisdiction over a parent who is an individual.

*Thomas Glob. Grp. L.L.C. v. Watkins*, No. 13-4864, 2016 WL 3946774, at *2 (D.N.J. July 19,

2016). For the same reasons, Plaintiff's attempt to impute jurisdiction from Wang's New Jersey

contacts to CEL is unavailing.[12]

The Court, accordingly, lacks personal jurisdiction over CAG and CEL.[13] Moreover,

because Plaintiff's claims against CAC are based solely on theories of alter ego and agency (Am.

Compl. ¶ 117), which the Court has declined to adopt as outlined above, the Court dismisses all

claims against CAC.[14] The Court now turns to the merits of Plaintiff's amended allegations against

Wang and CENN.

---

[12] Even if this Court were to recognize Plaintiff's advancement of a "reverse alter ego personal jurisdiction" theory, the Court finds that Plaintiff fails to allege facts sufficient to plausibly demonstrate that Plaintiff pierced the corporate veil. In other words, Plaintiff fails to allege facts establishing that Wang disregarded corporate formalities by, among other things, intermingling funds, sharing bank accounts, and failing to keep separate financial records.

[13] Because the Court does not have personal jurisdiction over CAG and CEL, it will not consider Defendants' arguments for dismissal of any claims asserted by Plaintiff against those two Defendants.

[14] Two principles animate this conclusion. For one, separate corporate forms must be respected and will not be disregarded to impose liability on an entity for the acts of a related entity except in limited circumstances. *See Bestfoods*, 524 U.S. at 61-62; *Ventron Corp.*, 468 A.2d at 164. Second, the Rule 12(b)(6) standard requires the plaintiff to plausibly allege that each "defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As a result, courts in this District generally do not allow "group pleading," because the complaint must allege "sufficient facts to identify each defendant's role." *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020). Putting those principles together, courts dismiss claims alleged indiscriminately against multiple defendants without factual allegations warranting an inference that each could be liable. *Glob. Fresh Produce, Inc. v. Epicure Trading, Inc.*, No. 11-1270, 2012 WL 924326, at *6 (D.N.J. Mar. 16, 2012). As such, absent facts to disregard the separate corporate forms, the Court cannot infer that CAC is factually alleged to be liable for the conduct alleged. *Id.*

**B.    Contractual Claims Against Wang (Counts I-IV)** [15]

Before analyzing the remaining claims separately, Wang contends, more generally, that any claims against him should be dismissed because he is not a party to the Employment Agreement or the CEL Agreement. [16] (Defs.' Moving Br. 27-35.) As for the Employment Agreement, Plaintiff acknowledges that Wang is not a party; Plaintiff, however, contends that Wang caused CAG to violate the agreement, and therefore, he is responsible for causing the breach. (*See* Am. Compl. ¶¶ 2, 60) With respect to the CEL Agreement, Plaintiff maintains that because Wang signed the agreement, he is a party to it, and further, that the Options contained in the CEL Agreement were coming from Wang's "personal commitment." (*See id* ¶¶ 28, 35.)

Here, the Court agrees with Wang's position that, as alleged, Wang cannot be held liable for Plaintiff's breach of contract claims in Counts I-IV because Wang is not a party to the contracts. "It is a general principle of contract law that only a party to a contract may be sued for breach of that contract." *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999) (citing *Crabtree v. Tristar Auto. Grp., Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991)). As it pertains to the breach of contract claims of the Employment Agreement in Counts I

---

[15] With respect to the controlling law, the parties do not dispute that Counts I and III are governed by Delaware law pursuant to a choice-of-law clause in Plaintiff's Employment Agreement. (*See* Am. Compl., Ex. B § 8(b).) "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770, 2014 WL 4662223, at *2 (D.N.J. Sept. 18, 2014) (quoting *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Accordingly, Delaware law applies to Counts I and III. With respect to Counts II and IV, the Court finds that New Jersey law applies because the CEL Agreement does not contain a similar choice of law provision.

[16] The Court notes that its analysis in its April 2023 Opinion does not change with respect to Defendants' argument that "Counts II and IV fail because the CEL [Agreement] is unenforceable for vagueness because it omits essential terms." (Defs.' Moving Br. 26 n.13.) For the same reasons, the Court rejects Defendants' argument. (Apr. Op. 19-21.)

26

and III, "Delaware law clearly holds that officers of a corporation are not liable on corporate contracts *as long as they do not purport to bind themselves individually.*" *Id.* (emphasis added) (citing *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439, 441 (Del. Super. Ct. 1968)); *see BAM Int'l, LLC v. MSBA Grp. Inc.*, No. 21-0181, 2021 WL 5905878, at *8 (Del. Ch. Dec. 14, 2021) (finding that "[c]orporate officers are not liable for breach of contracts entered by the corporation to which they have not bound themselves personally"). Similarly, as to the breach of contract claims pertaining to the CEL Agreement in Counts II and IV, under New Jersey law, a corporate officer "cannot be liable for breach of contract . . . where he simply signed on behalf of the corporate entity." *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 WL 482327, at *9 (D.N.J. Feb. 19, 2008); *Home Buyers Warranty v. Roblyn Dev. Corp.*, No. A-0500-05T5, 2006 WL 2190742, at *4 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (holding officer not personally liable even where he signed contract without noting his corporate title); *Lexins, LLC v. Powerplace Software, Inc.*, No. A-4578-10T3, 2012 WL 1537431, at *2 (N.J. Super. Ct. App. Div. May 3, 2012) ("[A]n individual who signs a contract will not be personally liable if their execution is as an officer of a corporation.").

Here, the Court finds that Plaintiff fails to establish that Wang is liable for either the breach of the Employment Agreement claims in Counts I and III or the breach of the CEL Agreement claims in Counts II and IV. First, Plaintiff's Employment Agreement and the CEL Agreement were contracts with the corporations and not with its officers; Wang thus cannot be held personally liable to Plaintiff for their actions that constituted the alleged breach of the agreements unless he intended to be personally bound under both Delaware and New Jersey law. "[A] corporation is an artificial entity that lacks the ability to function except through the actions of its officers, directors, agents, and servants," but those individuals "are not parties to any contract" of the corporation.

27

*Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31, 42 (N.J. 1989). "A corporation is regarded in law as an entity distinct from its individual officers, directors, and agents." *Id.* (citing *Specht v. Eastwood-Nealley Corp.*, 95 A.2d 485, 487 (N.J. Super. Ct. App. Div. 1953)); *see Brown*, 249 A.2d at 441 ("[Under Delaware law,] [a]s a general rule, so far as personal liability on corporate contracts is concerned, officers of corporations are in the same position as agents of private individuals and are not liable on corporate contracts as long as they do not act and purport to bind themselves individually."); *see also Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002) (explaining that under New Jersey law, corporate officers and employees may be charged individually under a participation theory with a tort committed by the corporate employer, but not for breach of contract by the corporation).

Second, Plaintiff fails to show that Wang intended to be personally bound to the Employment Agreement or the CEL Agreement. Plaintiff alleges, with respect to the Employment Agreement, that Wang should be held personally liable for the contractual claims because he caused CAG to violate the agreement. (Am. Compl. ¶ 60.) Plaintiff's conclusory statement fails to address—let alone plausibly allege—that Wang intended to be bound individually. And Wang, acting as an officer for CAG, cannot be personally liable for the acts of the corporation absent a showing of individual intent to be bound. Further, as it pertains to the CEL Agreement, Plaintiff's amended allegations merely state that Wang should be held liable because he signed the CEL Agreement on behalf of CEL, and the referenced options came "from Wang's personal commitment." (*Id.* ¶ 3.) But Wang cannot be held liable for the CEL Agreement based solely on allegations that he signed on behalf of CEL, which this Court has already held. (Apr. Op. 18.) Such vague allegations that the Options came from "Wang's personal commitment" will not suffice. As such, because the Amended Complaint does not allege that Wang sought to bind himself

28

individually to the Employment Agreement or CEL Agreement, these counts must be dismissed. The Court, accordingly, dismisses Counts I-IV against Wang.

Having dismissed Plaintiff's amended contractual claims, the Court now turns to Plaintiff's tort and quasi-contractual claims in Counts V-XII.

### C.    Tort and Quasi-Contract Claims (Counts V-XII) [17]

In Counts V through XII, Plaintiff asserts various tort claims, including tortious interference with prospective economic advantage, fraud, negligent misrepresentation, conversion, quasi-contract claims of promissory estoppel, unjust enrichment, and civil conspiracy. Defendants move to dismiss these claims for failure to state a claim. The Court will address each claim in turn as they relate to Wang and CENN.

#### 1.    Tortious Interference with Prospective Economic Advantage (Count V)

In Count V, Plaintiff alleges tortious interference with prospective economic advantage against Wang. (Am. Compl. ¶¶ 91-95.)

Plaintiff argues that Wang, as an officer of CAG, "tortiously interfered with the value Plaintiff could expect to realize from the . . . CEL Agreement Options by . . . refusing to include Plaintiff's vested . . . CEL Agreement Options among the securities converted into NBG/CENN stock in the Transaction," and "falsely representing that Plaintiff's . . . CEL Agreement Options would be treated the same as all other CAG options in the Transaction." (*Id.* ¶ 93.) Wang, on the other hand, argues that the tortious interference claim brought against him should be dismissed

---

[17] With respect to Plaintiff's tort claims and quasi-contract claims (Counts V through XII), Defendants apply New Jersey substantive law pursuant to New Jersey's default choice-of-law rules. In that connection, the Court notes that no choice-of-law clause applies, and Plaintiff has not identified another state with a greater interest here than New Jersey. *See Labbe v. OSI Outsourcing Sols., Inc.*, No. 14-5049, 2015 WL 1851141, at *2 (D.N.J. Apr. 22, 2015) (analyzing the parties dispute as to whether New Jersey law or Delaware law applies).

based on Plaintiff's failure to allege a "reasonable expectation" of any economic advantage. (Defs.' Moving Br. 30.) Specifically, Wang argues that "Plaintiff had no legal right (express or implied) to have his options converted into options to purchase CENN stock in the . . . Transaction," making any expectation of economic advantage unreasonable. (*Id.*)

"Tortious interference developed under common law is to protect parties to an existing or prospective contractual relationship from outside interference." *Printing Mart-Morristown*, 563 A.2d at 38 (citation omitted). To set forth a tortious interference with prospective economic advantage claim, a plaintiff must adequately allege: (1) a "reasonable expectation of economic advantage" from a business relationship; (2) interference "done intentionally and with malice," which means "the harm was inflicted intentionally and without justification or excuse"; (3) "the interference caused the loss of the prospective gain"; and (4) damages as a result of the loss. *Id.* at 37 (internal quotation marks omitted).

Interference is actionable "even where there is no enforceable contract." *Id.* at 36. However, "the right protected is plaintiff's right to *pursue* business." *Id.* at 38 (internal quotation marks omitted) (emphasis added). "[I]f an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference will lie." *Vosough v. Kierce*, 97 A.3d 1150, 1160 (N.J. Super. Ct. App. Div. 2014) (quoting *DiMaria Constr., Inc. v. Interarch*, 799 A.2d 555, 561 (N.J. Super. Ct. App. Div. 2001)). "[A]n action for tortious interference will lie" only if "the employee or agent is acting outside the scope of his or her employment or agency." *DiMaria*, 799 A.2d at 561. A plaintiff must, therefore, allege that the alleged wrongful actions were outside the scope of employment and done for personal motives, out of malice, beyond their authority, and otherwise not in good faith in the interests of the employer. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n.11 (3d Cir. 1996).

At the outset, the Court notes that contrary to Wang's argument that Plaintiff had no legal right regarding the Options conversion, a "reasonable expectation" need not be a contractual right. *Carpet Grp. Intern. v. Oriental Rug Imps. Ass'n*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003) ("Tortious interference with contractual relations and tortious interference with prospective economic advantages . . . are identical except that the tortious interference with contractual relations claim requires proof of an existing contract."). Notwithstanding this, the Court nevertheless finds that Plaintiff fails to state a claim for tortious interference with prospective economic advantage against Wang.

Plaintiff asserts a tortious interference claim against Wang in his capacity as the former CEO of CAG. (Am. Compl. ¶ 14.) Such a claim will only lie if the officer is acting outside the scope of his duties. *See DiMaria*, 799 A.2d at 561. Here, Plaintiff fails to allege that Wang was acting outside of the scope of his duties in his dealings with Plaintiff. Nor does Plaintiff allege that Wang acted beyond his authority and otherwise not in good faith in the interests of CAG. As such, Plaintiff's tortious interference with prospective economic advantage claim must be dismissed.[18] *See Vosough*, 97 A.3d at 1160 (explaining that a tortious interference claim cannot stand against the CEO absent a showing that the CEO was acting outside the scope of their employment and done for personal motives, out of malice, beyond their authority, and otherwise not in good faith in the interests of the corporation).

---

[18] But, even if Plaintiff adequately alleged that Wang exceeded his authority as an officer of CAG, the Court finds that Plaintiff fails to adequately allege that he had a "reasonable expectation" or that such alleged interference was done intentionally to interfere with Plaintiff's Options. (*See generally* Am. Compl.)

2.    *Fraud (Count VI)*

In Count VI, Plaintiff alleges a claim of fraud against Wang. (Am. Compl. ¶¶ 96-104.)

Plaintiff alleges that Wang "misrepresented that Plaintiff's Options would be converted in the Transaction into the right to purchase NBG/CENN stock" and that such misrepresentations were made "knowing they were false or with a reckless indifference for the truth." (*Id.* ¶¶ 98-99.) According to Plaintiff, he reasonably relied on the purported misrepresentations to his detriment and only learned that Wang made misrepresentations and/or false statements after the Transaction closed. (*Id.* ¶¶ 102, 104.) Wang, on the other hand, submits that Plaintiff's fraud claim should be dismissed because an integration and "no oral modifications" clause in the Employment Agreement "blocks any attempt by Plaintiff to rely on oral assurances of [O]ption protection[.]" (Defs.' Moving Br. 27.) Wang further contends, in the alternative, that Plaintiff's fraud claim should be dismissed because Plaintiff does not: (1) identify any misrepresentations made by Wang; (2) allege that any purported misrepresentations were false when made; and (3) plead his fraud-based claims with the required particularity. (*Id.* at 30-32.) In response, Plaintiff contends that the CEL Agreement does not contain an integration and no oral modifications clause, and to the extent that such a clause does exist in the Employment Agreement, it does not bar Plaintiff's claims. (*See* Pl.'s Opp'n Br. 22-23.)

To state a claim of common-law fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citation omitted). A plaintiff asserting a claim of common law fraud must show that the defendant acted with scienter. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153,

1182-83 (3d Cir. 1993) (citing *Batka v. Liberty Mut. Fire Ins.*, 704 F.2d 684, 688 (3d Cir. 1983). In addition, since fraud claims fall under Rule 9(b)'s heightened particularity requirement, a plaintiff alleging fraud must state the circumstances constituting fraud with particularity. Fed. R. Civ. P. 9(b); *see Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99 (3d Cir. 1983) ("[Rule 9(b)] applies . . . [to] fraud claims based on state law."). Under Rule 9(b), however, malice, intent, knowledge, and other conditions of mind of a person may be averred generally. Fed. R. Civ. P. 9(b). At a minimum, Rule 9(b) requires a plaintiff to identify who made the fraudulent statements. *See Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (affirming dismissal of plaintiff's common-law fraud claim under Rule 9(b) based on plaintiff's failure to allege the particular individual or the circumstances surrounding her discussion with the person that allegedly made false statements).

Here, Plaintiff fails to sufficiently allege fraud claims against Wang because Plaintiff fails to overcome Rule 9(b)'s particularity requirement. Although Plaintiff states that CAG's CFO He and EVP Chow made misrepresentations on several occasions (Am. Compl. ¶ 45), Plaintiff only alleges that Wang directed CFO He and EVP Chow to make those misrepresentations, not that Wang made them himself. (*See id.* ¶ 98.) Because broad and conclusory statements fail to survive Rule 9(b)'s particularity requirement, the Court finds that Plaintiff did not sufficiently plead claims of fraud under Rule 9(b). *See Frederico*, 507 F.3d at 200-01 (dismissing plaintiff's fraud claims for failure to plead with particularity under Rule 9(b) beyond broad statements). The Court, accordingly, dismisses Plaintiff's fraud claim against Wang.

   2. *Negligent Misrepresentation (Count VIII)*

In Count VIII, Plaintiff asserts negligent misrepresentation claims against Wang and CENN. (Am. Compl. ¶¶ 113-118.)

In its April 2023 Opinion, the Court dismissed Plaintiff's negligent misrepresentation claims as to Wang and CENN because Plaintiff failed to allege any false statements made directly by Wang or CENN. (Apr. Op. 24-25.) Plaintiff now alleges that "[Wang and CENN] misrepresented that [his] Options would be converted in the Transaction into the right to purchase NBG/CENN stock." (Am. Compl. ¶ 98.) Plaintiff maintains that "[t]he misrepresentations were made to [him] at the direction of . . . Wang in his capacity as Chairman and President of CEL and CEO of CAG." (*Id.*) Plaintiff further alleges that he "understood" that the purported misrepresentations "were coming from . . . Wang because neither [CFO] He nor [EVP] Chow had the operational control or discretion." (*Id.* ¶ 45.)

To plead a claim for negligent misrepresentation, a plaintiff must adequately allege "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000).

To sustain a claim for negligent misrepresentation, a plaintiff, however, is also required to plead that a defendant owed a duty of care arising independently from any contractual duties between the parties. *See S. Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 396 (D.N.J. 2007). "If there is no duty owed to a plaintiff independent of what the defendant owes plaintiff under a contract, a plaintiff may not maintain a tort claim (as a necessary element of the tort claim is absent)." *Id.* (citing *Saltiel*, 788 A.2d at 280). Under New Jersey law, the economic loss doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort, particularly in strict liability and negligence cases."

*Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 968 A.2d 192, 202 (N.J. 2009)). The economic loss doctrine functions to eliminate recovery on "a contract claim in [an unintentional] tort claim clothing." *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (2013 D.N.J.) (citing *New Mea Constr. Corp. v. Harper*, 497 A.2d 534, 538-39 (N.J. Super. Ct. App. Div. 1985)).

Here, the Court finds that Plaintiff's negligent misrepresentation claims against Wang and CENN are barred by the economic loss doctrine. *See MJF Elec. Cont., Inc. v. Toms River Bd. of Ed.*, No. 20-7336, 2021 WL 1168962, at *5-6 (D.N.J. Mar. 26, 2021) (barring plaintiff's claim against a defendant—who did not have contractual privity with the plaintiff—because the negligence remedies the plaintiff sought against the defendant could plainly be characterized as contractual remedies against co-defendant who was in contractual privity). Plaintiff's Amended Complaint fails to allege that Wang and CENN owed Plaintiff any independent duty of care. Instead, Plaintiff alleges, in a conclusory fashion, that Wang and CENN "had to accurately and completely communicate with respect to the treatment of Plaintiff's Options in connection with the Transaction." (Am. Compl. ¶ 114.) The Court, nevertheless, is "persuaded that this case is essentially a . . . breach of contract case, and that [Plaintiff] through [his] [negligent misrepresentation] allegations, simply is seeking to enhance the benefit of the bargain [he] contracted for with [CAG and CEL]." *Saltiel*, 788 A.2d at 280. In other words, Plaintiff's negligent misrepresentation claims against Wang and CENN (Am. Compl. ¶ 116), closely track his breach of contract claims (*see id.* ¶ 59). In both his tort and contract claims, Plaintiff faults Wang and CENN for their failure to include Plaintiff's Options to be converted in the Transaction. (*Compare id.* ¶ 59 ("[Wang and CENN] materially breached the Employment Agreement by . . . excluding Plaintiff's vested Employment Agreement Options from the CAG options converted . . . in the

35

Transaction," *with id.* ¶ 116 ("[Wang and CENN] failed to exercise reasonable ca[r]e . . . in failing to include Plaintiff's Options among the CAG options converted . . . in the Transaction."). In essence, Plaintiff is alleging that Wang and CENN breached only a duty of care arising out of Plaintiff's and CAG's contractual relationship—not a duty of care arising from an independent source. *See Int'l Mins. & Min. Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 597 (D.N.J. 1990) ("Where a party does not owe another a duty of care absent the existence of a contract, a separate duty of care cannot arise simply by virtue of the existence of the contract."); *Saltiel*, 788 A.2d at 316 (holding that a tort claim may lie if a defendant owes a duty of care separate and apart from the contract between the parties). Simply stated, Wang and CENN's alleged failure to include Plaintiff's Options in the Transaction was not a violation of an obligation independent from CAG and Plaintiff's contractual relationship.

As such, because Plaintiff failed to allege an independent duty imposed by law, Plaintiff's negligent misrepresentation claims against Wang and CENN (Count VIII) are dismissed. *Saltiel*, 788 A.2d at 316 ("[A] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law.").

### 3.    *Promissory Estoppel (Count VII)*

In Count VII, Plaintiff asserts a claim of promissory estoppel against Wang. (Am. Compl. ¶¶ 105-112.)

Plaintiff's promissory estoppel claim is based on his (1) purported reliance on promises that he would receive stock options as a condition of his employment, (2) purported reliance on statements that the Employment Agreement Options would convert into CENN Options upon the Transaction, and (3) alleged understanding that such statements also applied to his CAG Options granted pursuant to the CEL Agreement. (Am. Compl. ¶¶ 106, 109, 110.) Wang, on the other hand,

contends that this claim should be dismissed, in part, because Plaintiff fails to allege a clear and definite promise regarding the conversion of his Options in the Transaction.[19] (Defs.' Moving Br. 32-34.).

To state a claim for promissory estoppel in New Jersey, a plaintiff must adequately allege "four elements: (1) a clear and definite promise; (2) made with the expectation that the [plaintiff] will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros. Inc. v. Bd. of Chosen Freeholders*, 944 A.2d 1, 19 (N.J. 2008) (citation omitted). "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 752 (N.J. 1996) (quoting Restatement (Second) of Contracts § 5 cmt. a (1979)).

Here, Plaintiff's amended allegations, the Agreements, the newly submitted Form 6-K[20], and the newly submitted Acquisition Agreement, when considered collectively and in a light most favorable to Plaintiff, state a plausible promissory estoppel claim against Wang. Specifically,

---

[19] Wang also contends that this Court should disregard the Acquisition Agreement attached to Plaintiff's opposition because it "is an improper attempt by Plaintiff 'to supplement the [Amended Complaint]' by providing new facts in his opposition.'" (Defs.' Reply. Br. 15 n.12.) The Court, however, disagrees, as the undisputed authentic Acquisition Agreement is explicitly mentioned in Plaintiff's Amended Complaint when referring to the Form 6-K (Am. Compl. ¶ 43) and is central to his claim for promissory estoppel. As such, the Court will consider the Acquisition Agreement in assessing the sufficiency of Plaintiff's promissory estoppel claim. *See Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[In considering a motion to dismiss,] a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.")); *see also Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 559-60 (3d Cir. 2002) (explaining that a court may rely on documents attached to an opposition to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claim).

[20] Plaintiff alleges that "he first learned of the . . . Transaction . . . when it was publicly disclosed by NBG in a November 5, 2021 filing on Form 6-K with the United States [SEC]." (Am. Compl. ¶ 41.)

37

Plaintiff alleges that "[u]pon learning of the Transaction, [Wang] represented to [him] on several occasions that Plaintiff's Options would be converted into the right to purchase NBG/CENN stock in the Transaction and/or treated *parri passu* with other vested CAG options." (Am. Compl. ¶ 109) Plaintiff also alleges that on several occasions, CAG's representatives CFO He and EVP Chow made representations, at the direction of Wang, "that his Options had been listed among the options to be converted in the official Transaction documents." (*Id.* ¶ 45.) Plaintiff further alleges that the Form 6-K acknowledged his Options by stating, "[o]n August 1 and December 31, 2017, CAG Cayman granted 6,300,000 options and 2,580,000 options to the employees and directors of the [c]ompany to purchase CAG Cayman's ordinary shares." (*Id.* ¶ 44.)

Considering these allegations collectively, it can be inferred that CAG's representatives, including Wang, made such statements to Plaintiff that his Options would be converted and that such statements constituted a promise, i.e., Plaintiff was promised his Options would be included in the Transaction. Plaintiff further alleges that Wang made and directed others to make these representations expecting that Plaintiff would rely on them because Wang intended "to benefit himself and . . . CEL, so that they would receive more of the benefits from the Transaction." (*Id.* ¶ 47.) Finally, Plaintiff alleges that he relied on these representations (*id.* ¶ 102) and was harmed as a result, which left his Options rendered worthless (*id.* ¶ 48). As such, because Plaintiff sufficiently pled the elements of a promissory claim, the Court denies Defendants' Motion to Dismiss, in part, as it pertains to Plaintiff's promissory estoppel claim against Wang.

4.    *Unjust Enrichment (Counts IX and X)*

In Counts IX and X, Plaintiff asserts claims for unjust enrichment against Wang (Am. Compl. ¶¶ 119-123) and CENN (*id.* ¶¶ 124-127).

To succeed on an unjust enrichment claim under New Jersey law, a plaintiff must prove "(1) that the defendant . . . received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009) (quoting *Wanaque Borough Sewerage Auth.*, 677 A.2d at 752). "Since a plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element has been interpreted by New Jersey courts as a requirement that the plaintiff allege a sufficiently *direct relationship* with the defendant to support the claim." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (emphasis added) (citation and internal quotation marks omitted).

Here, Plaintiff's Amended Complaint faces the same flaws as his original complaint, as Plaintiff does not allege any direct relationship with Wang or CENN. Plaintiff cannot succeed on his unjust enrichment claim absent allegations of a direct relationship between him and Wang and CENN. *See MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 442 (D.N.J. 2012) (dismissing the plaintiff's unjust enrichment claim based on New Jersey law because the plaintiff did not allege that any direct relationship existed between the plaintiff and the shareholder-defendants from whom the plaintiff sought recovery). The only direct relationship alleged is between Plaintiff and CAG through the Employment Agreement and Plaintiff and CEL through the CEL Agreement. The Court, accordingly, dismisses Plaintiff's unjust enrichment claims in Counts IX and X.

5.    *Conversion (Count XI)*

In Count XI, Plaintiff asserts conversion claims against Wang and CENN. (Am. Compl. ¶¶ 128-132.)

Under New Jersey law, a claim for conversion is based on "the wrongful exercise of dominion and control over the property of another in a manner inconsistent with the other person's rights in that property." *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 771 (3d Cir. 1990) (citing *Mueller v. Tech. Devices Corp.*, 84 A.2d 620, 623 (N.J. 1951)). The elements of conversion are: (1) the existence of property; (2) the right to immediate possession thereof belonging to the plaintiff; and (3) the wrongful interference with that right by the defendant. *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (citation omitted).

Here, the Court finds that Plaintiff has failed to sufficiently allege conversion because Plaintiff has not adequately stated whether Plaintiff had a right to the immediate possession of his Options being converted into CENN stock and whether Wang and CENN wrongfully interfered with said right. Plaintiff fails to demonstrate that he had a "right to have his Options converted in the Transaction." (Am. Compl. ¶ 6.) Unlike Plaintiff's rights to his Options, which are supported by the Employment Agreement and CEL Agreements (*id.* Exs. B, C), Plaintiff's only support for the right to the converted shares are representations from CAG's CFO He and EVP Chow. (*Id.* ¶ 45). Plaintiff understood that his Options would be converted because He and Chow represented that his "Options had been listed among the [O]ptions to be converted in the official Transaction documents." (*Id.*) Plaintiff, however, fails to point the Court to facts showing that having his Options listed also guaranteed a right to have them converted. Even assuming Plaintiff did have a right to the converted shares, Plaintiff also fails to plead how Wang and CENN were the parties

responsible for having interfered with that right. The Court, accordingly, dismisses Plaintiff's conversion claims.

        6.     *Civil Conspiracy (Count XII)*

        Lastly, in Count XII, Plaintiff asserts civil conspiracy claims against Wang and CENN. (Am. Compl. ¶¶ 133-137.)

        Under New Jersey law, to state a claim for civil conspiracy, a plaintiff must adequately allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 412 (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005)). Moreover, the plaintiff must allege some act that is itself a tort that was committed by one of the parties in pursuance of the agreement. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414-15 (3d Cir. 2003) (citing *James v. Evans*, 149 F. 136, 140 (3d Cir. 1906); *id.* ("[T]he New Jersey Supreme Court explained that '[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action.'" (quoting *Bd. of Ed. v. Hoek*, 183 A.2d 633, 646 (N.J. 1962)).

        Because Plaintiff's civil conspiracy claim is now the sole surviving tort claim in the Amended Complaint, and Plaintiff fails to allege other tortious acts committed by Defendants,

Plaintiff's civil conspiracy claim must be dismissed.[21] *See Dist. 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011) (dismissing the plaintiff's civil conspiracy claim after all of the plaintiff's other tort claims failed); *Snow and Ice Mgmt. Co. of PA v. Tryko Partners, LLC*, No. 21-16233, 2023 WL 4551689, at *3 (D.N.J. July 14, 2023) (dismissing the defendants' civil conspiracy counterclaim for failure to establish an underlying tort claim). The Court, accordingly, dismisses Plaintiff's conspiracy claim.

## IV.    CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' Motion to Dismiss. As to the claims dismissed herein, the Court will grant Plaintiff leave to amend to correct the deficiencies identified in this Memorandum Opinion in any second amended complaint. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[21] Even if the Court found that Plaintiff sufficiently alleged a tort, the Court finds that Plaintiff fails to allege that Defendants committed an unlawful act—that the mere exclusion of Plaintiff's options was unlawful. Moreover, the Court finds that Plaintiff's civil conspiracy claims fail against CAC and Wang because under the intra-corporate conspiracy doctrine, a parent company cannot conspire with its own subsidiaries, and a corporation cannot conspire with its own principals. *See United States v. Medco Health Sys., Inc.*, No. 12-522, 2014 WL 4798637, at *11 (D.N.J. Sept. 26, 2014); *Imp. Serv. Corp. v. Aliotta*, No. 22-4640, 2023 WL 3173568, at *13 (D.N.J. Apr. 28, 2023) (barring conspiracy claim as against corporate entities and its principal/owner).