NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| XIONGJIAN CHEN,<br><br>    Plaintiff,<br><br>  v.<br><br>PETER ZUGUANG WANG, *et al.*,<br><br>    Defendants. | Civil Action No. 22-4708 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on two separate Motions for Reconsideration. The first motion is by Plaintiff Xiongjian Chen ("Plaintiff") (ECF No. 60), and the second is by Defendant Peter Zuguang Wang ("Wang") (ECF No. 61). Defendant Cenntro Automotive Group Limited ("CAG") opposed Plaintiff's motion (ECF No. 62), and Plaintiff opposed Wang's motion (ECF No. 63). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, both motions are denied.[1]

---

[1] The Court also notes that Wang filed a Motion for Leave to File a Reply Brief in Support of his Motion for Reconsideration (ECF No. 64) and Plaintiff opposed (ECF No. 65). The Court, however, finds no good cause to permit and consider the reply brief. Accordingly, the Court denies Wang's Motion for Leave to File a Reply Brief.

I.  **BACKGROUND**[2]

The Court assumes the parties' familiarity with the underlying facts and procedural history and only recites those facts necessary to decide the instant motions.

Plaintiff is the former Chief Operating Officer ("COO") of CAG (Am. Compl. ¶ 10, ECF No. 27), and Wang is its former Chairman and Chief Executive Officer ("CEO") (*id.* ¶ 14). CAG, an electric vehicle designer and manufacturer, sold its assets and operating subsidiaries to Naked Brand Group Limited ("NBG"), an Australian company listed on the NASDAQ, in exchange for NBG stock (the "Transaction"). (*See id.* ¶¶ 5, 11, 41-42.) NBG subsequently changed its name to Cenntro Electric Group Limited ("CENN"), and Wang became its Chairman and CEO (*id.* ¶ 42).

Plaintiff brought this suit against Wang, CAG, CENN, and Cenntro Enterprise Limited ("CEL") (collectively, "Defendants") based on a dispute about stock options (the "Options") granted to him by two agreements: (1) his employment agreement with CAG to serve as its COO ("Employment Agreement"); and (2) an agreement between Plaintiff and Wang and/or CEL ("CEL Agreement," collectively, the "Agreements"). (*Id.* ¶¶ 1-2, 27.) Plaintiff alleges that Defendants interfered with the Agreements by not converting Plaintiff's Options into NBG options, rendering them worthless and depriving Plaintiff of the opportunity to profit from the Transaction. (*Id.* ¶¶ 5-6.)

In its April 2023 Opinion, the Court dismissed Plaintiff's original complaint in its entirety pursuant to Defendants' Motion to Dismiss ("April 2023 Opinion"). (*See generally* Apr. Op., ECF No. 25) In May 2023, Plaintiff filed an Amended Complaint (Am. Compl.), and Defendants again moved to dismiss (ECF No. 32). In November 2024, the Court granted in part and denied in part

---

[2] Because the parties have moved for reconsideration of the Court's decisions on motions to dismiss, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Defendants' motion to dismiss ("November 2024 Opinion"). (*See generally* Nov. Op., ECF No. 58.) Specifically, the Court: (1) granted Defendants' motion as it pertained to CAG and dismissed all claims against it for want of personal jurisdiction (*id.* at 11-12); and (2) denied Defendants' motion as it pertained to Plaintiff's promissory estoppel claim against Wang (*id.* at 38).

On November 26, 2024, Plaintiff moved for reconsideration of the Court's finding in its November 2024 Opinion that it lacked personal jurisdiction over CAG. (Pl.'s Moving Br. 4, ECF No. 60-1.) Alternatively, Plaintiff requests that the Court permit him to take jurisdictional discovery. (*Id.*) That same day, Wang moved for reconsideration of the Court's determination in its November 2024 Opinion that Plaintiff adequately plead a promissory estoppel claim against Wang. (Wang's Moving Br. 1, ECF No. 61-1.)

## II.     LEGAL STANDARD

Reconsideration under Local Civil Rule 7.1 is "an extraordinary remedy" that is rarely granted. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002) (citations omitted). A party moving for reconsideration must set forth the factual matters or controlling legal authorities that the Court overlooked when rendering its decision. *See* L. Civ. R. 7.1(i). A motion for reconsideration is not "an opportunity for a second bite at the apple." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998) (citations omitted).

To prevail on a motion for reconsideration, the movant "must show (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Swint v. United States*, No. 24-2222, 2025 WL 88836, at *3 (3d Cir. Jan. 14, 2025) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotation marks omitted)).

3

"A court commits clear error of law 'only if the record cannot support the findings that led to the ruling.'" *Rich v. State*, 294 F. Supp. 3d 266, 272 (D.N.J. 2018) (quoting *ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010)). "Thus, a party must do more than allege that portions of a ruling were erroneous in order to obtain reconsideration of that ruling" on the basis of clear error. *ABS Brokerage Servs.*, 2010 WL 3257992, at *6. Reconsideration is permitted "only when 'dispositive factual matters or controlling decisions of law' were presented to the court but were overlooked." *Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507 (quoting *Resorts Int'l v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992); *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 337 (D.N.J. 1995)).

### III.   DISCUSSION

#### A.   Plaintiff's Motion for Reconsideration

In moving for reconsideration, Plaintiff argues that the Court made a clear error of fact by misunderstanding the significance of certain Securities and Exchange Commission ("SEC") filings made by CAG.[3] (Pl.'s Moving Br. 3-4.) Specifically, Plaintiff argues that the Court erred in its November 2024 Opinion by referencing CENN's SEC filings instead of CAG's SEC filings when analyzing whether CAG was subject to personal jurisdiction in New Jersey. (*Id.*) In doing so, Plaintiff points to the following portion of the November 2024 Opinion: "Plaintiff

---

[3] Plaintiff does not identify any intervening change in the controlling law, new evidence, clear error of law, or manifest injustice. (*See generally* Pl.'s Moving Br.) The Court, therefore, will only address Plaintiff's motion in the context of whether the Court has committed a clear error of fact. *See Max's Seafood Cafe*, 176 F.3d at 677.

4

provides: (1) [SEC] filings submitted by CENN listing New Jersey locations, dated November 5 and December 21, 2021, respectively[.]" (*Id.* at 3 (quoting Nov. Op. 10).)

Plaintiff contends that, had this Court considered CAG's—not CENN's—SEC filings in its November 2024 Opinion, it would have been "unreasonable to believe New Jersey was not CAG's principal place of business in December 2021, or that CAG fled the state by July 2022[.]" (*Id.* at 4.) Because of this alleged error, Plaintiff asks this Court to reconsider its determination that it lacks personal jurisdiction over CAG or, alternatively, permit Plaintiff to take jurisdictional discovery. (*Id.*) Upon review of its November 2024 Opinion, the Court finds that it has not made a clear error of fact in granting CAG's motion to dismiss for lack of personal jurisdiction.

To begin, in its November 2024 Opinion, the Court incorporated by reference "its discussion from the April 2023 Opinion[.]" (Nov. Op. 9 n.7.) In its April 2023 Opinion, the Court explicitly considered and rejected Plaintiff's argument that CAG's alleged SEC filing automatically demonstrated that the Court had general jurisdiction over CAG in New Jersey.[4] (Apr. Op. 11-12.) Acknowledging that CAG received SEC filings listing an address in Freehold, New Jersey, the Court explained that Plaintiff failed to show that New Jersey was CAG's principal place of business as of July 22, 2022, the date Plaintiff commenced the suit. (*See id.*)

After dismissing Plaintiff's original complaint, Plaintiff filed an Amended Complaint and affixed documentary evidence in furtherance of his argument that this Court can exercise personal jurisdiction over CAG. (Pl.'s Opp'n Br. to Defs.' Mot. to Dismiss 12-14, ECF No. 41.) Specifically, Plaintiff provided SEC filings by CENN (*id.* Exs. I, M, ECF Nos. 41-10, 41-14);

---

[4] The Court, in its April 2023 Opinion, also noted that "SEC filings alone are insufficient to demonstrate principal place of business in response to a jurisdictional challenge." (Apr. Op. 11-12 (quoting *B2 Opportunity Fund, LLC v. Trabelsi*, No. 17-10043, 2017 WL 3707383, at *5 n.6 (D. Mass. Aug. 28, 2017).)

5

CAG employment contracts (*id.* Exs. E, F, ECF Nos. 41-6, 41-7); and CAG's engagement letter with a New York law firm (*id.* Ex. C, ECF No. 41-4); all of which listed New Jersey addresses. Plaintiff also included the November 29, 2021, SEC filing by CAG that was referenced in the Court's April 2023 Opinion. (*Id.* Ex. L, ECF No. 41-13; Apr. Op. 11-12.)

Because the April 2023 Opinion considered the alleged SEC filings by CAG listing an address in Freehold, New Jersey (Apr. Op. 11-12), those filings were part of the "SEC forms" and "documentary sources" that the Court considered in its November 2024 Opinion before determining that "[n]one of these documentary sources, however, individually or taken together, are sufficient to show that CAG and CEL maintain such a robust presence in New Jersey as of July 2022 that they can fairly be considered 'at home' here." (Nov. Op. 9 n.7, 12.) On that basis, this Court properly concluded in its November 2024 Opinion that it lacked general personal jurisdiction over CAG. (*Id.* at 12.)

In sum, Plaintiff does not present any changes in the law, new evidence, or persuasive arguments as to how this Court committed the alleged error in failing to consider CAG's SEC filing for the purpose of general jurisdiction. As such, Plaintiff's motion to reconsider this Court's November 2024 Opinion as it pertained to personal jurisdiction over CAG is denied.[5]

---

[5] Although the Court did not explicitly deny Plaintiff's request for jurisdictional discovery in its November 2024 Opinion, the Court implicitly denied the request when granting Defendants' motion to dismiss for want of personal jurisdiction as to CAG. To the extent Plaintiff "presents [further] factual allegations [in any second amended complaint] that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [CAG] and [New Jersey,]'" the Court will entertain a subsequent request for jurisdictional discovery. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation omitted).

### B. Wang's Motion for Reconsideration

Wang's motion for reconsideration alleges that this Court made two errors of law when denying his motion to dismiss as it pertained to Plaintiff's promissory estoppel claim. (*See generally* Wang's Moving Br.) Wang argues the Court erred, first, by holding that Plaintiff has sufficiently alleged an actionable promise by Wang, and second, by holding that Plaintiff could reasonably rely on any such promise. (*Id.* at 8-15.) The Court will address each of Wang's arguments in turn.

#### 1. *Actionable Promise*

First up is Wang's argument that the Court erred in holding that Plaintiff sufficiently alleged that Wang made an actionable promise to Plaintiff. (*Id.* at 8-12.)

Wang makes three arguments that Plaintiff failed to allege any actionable promise: (1) the Amended Complaint does not allege any promises by Wang in his personal capacity (*id.* at 8-10); (2) the Amended Complaint does not allege that CAG's Chief Financial Officer David He ("CFO He") or CAG's Executive Vice President Kelly Chow ("EVP Chow") had actual or apparent legal authority to make promises on Wang's individual behalf (*id.* at 5, 10-12); and (3) that statements in the Form 6-K cannot be attributed to Wang because the 6-K was filed by NBG before combining with CAG and was signed by NBG's former CEO, not Wang (*id.* at 12). Having reviewed the Court's November 2024 Opinion, the Court finds that it has not made an error of law in determining that Plaintiff sufficiently alleged an actionable promise by Wang individually.

First, Plaintiff has plausibly plead that a promise existed between Wang, individually, and Plaintiff as to the treatment of his Options in the Transaction. To begin, the CEL Agreement is signed by Wang and states, "[w]e, as founders and major shareholders [] of [CAG] . . . would offer to grant you stock options[.]" (Pl.'s Opp'n Br. to Defs.' Mot. to Dismiss, Ex. B, 6, ECF No. 41-3.)

Wang is listed as the "founder and principal shareholder of CAG" on NBG's Form 6-K filed in anticipation of their Special Purpose Acquisition Company ("SPAC") deal with CAG. (Defs.' Mot. to Dismiss the Original Compl., Ex. A, 92, ECF No. 12-4.) Based on those well-pled facts, it is plausible that Wang granted Plaintiff stock options in CAG not merely in his capacity as its CEO, but in his individual capacity as a major shareholder of CAG.[6] Plaintiff also alleges that in discussions with Wang about his Options in 2020, where Plaintiff ultimately agreed to relinquish some unvested Options, "Wang led [Plaintiff] to believe that [his] [O]ptions would be treated like all other company options[,]" that is, converted in the Transaction. (CAG's Opp'n Br. 7-8, ECF No. 63.) This allegation further corroborates the plausibility of Plaintiff's claim that Wang, individually, granted Plaintiff stock options, and that Wang, individually, promised those options would be treated like all others.

Next, the Court need not decide at this preliminary juncture whether CFO He or EVP Chow could bind Wang individually to create an actionable promise. Even if they were unable to, Plaintiff's well-pled allegations concerning their statements that some of Plaintiff's Options were from Wang, and that Plaintiff's Options would be converted in the Transaction, bolster his contention that there was a promise between Wang and Plaintiff that his Options would be treated like all others. *See Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 800 (W.D. Ky. 2005), *aff'd*, 279 F. App'x 378 (6th Cir. 2008) (recognizing that statements reassuring a promisee of the fulfillment of the promise could corroborate the existence of a promise in the first instance).

---

[6] To be clear, the Court did not find that the Agreements constitute the promise. But, instead, the Court found that while the Agreements do not bind Wang for the contractual claims, they corroborate the existence of a promise beyond the plausibility level, which is all that is required at the motion to dismiss stage.

In the Amended Complaint, Plaintiff alleges CFO He told him that some of his Options were from Wang's "personal commitment," that on six separate occasions, CFO He told Plaintiff that his Options would be converted in the Transaction, and that EVP Chow made similar representations on five separate occasions. (Am. Compl. ¶¶ 39, 45.) Plaintiff further alleges that he understood that these statements were coming from Wang because, as COO, he knew that "neither [CFO] He nor [EVP] Chow had the operational control or discretion to direct which [o]ptions would be converted in the Transaction. Instead, that decision[-]making authority was held . . . by [] Wang." (*Id.* ¶ 45.) These assurances from CFO He and EVP Chow, whether instructed by Wang individually, as CEO of CAG, or not at all, corroborate the plausible existence of a promise between Wang and Plaintiff that his Options would be treated like all others. At this stage, "[t]he pleading standard . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Green v. Izod Corp. Off. & Headquarters*, No. 22-6380, 2023 WL 2992674, at *3 (D.N.J. Apr. 18, 2023) (citations omitted). Here, the Amended Complaint raises more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See id.* Plaintiff has plausibly alleged that a promise existed between him and Wang individually about how his Options would be treated in the Transaction.

Finally, with respect to the Form 6-K, the Court has not held that those statements are attributable to Wang individually. (*See generally* Nov. Op.) Wang's argument, therefore, that the Court erred by attributing statements in the Form 6-K to him lacks merit. As discussed in the November 2024 Opinion, the Form 6-K "acknowledged [Plaintiff's] Options by" describing them by amount and date. (Nov. Op. 38.) This merely corroborates and bolsters Plaintiff's allegation

9

that a promise existed by providing documentary evidence showing that Plaintiff's Options were listed on a pre-transaction filing.

### 2. *Reasonable Reliance*

Next up is Wang's argument that the Court erred in holding that Plaintiff could reasonably rely on any promise by Wang. (Wang's Moving Br. 13-15.) Specifically, Wang argues that the Court erred because: (1) the no oral modifications clause in the Employment Agreement is functionally an anti-reliance clause, barring any future oral promises on the subject matter of the contract (*id. at* 13); and (2) even if it does not, NBG's Form 6-K filing put Plaintiff on notice that his Options would not be converted because they were not granted under the CAG equity plan (*id.* at 14). The Court is unpersuaded by Wang's arguments.

Under Delaware law, which governs the Employment Agreement, "[t]he court, at the motion to dismiss stage, will not 'choose between two differing reasonable interpretations of ambiguous provisions.'" *Talkdesk, Inc. v. DM Trans, LLC*, No. N23C-08-005, 2024 WL 2799307, at *4 (Del. Super. Ct. May 31, 2024) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003)). Here, the parties assert two different reasonable interpretations as to whether the no oral modifications clause/anti-reliance clause applies to the treatment of options during a transaction based on the integration clause included in the contract. The integration clause states, in part: "[t]his Agreement constitutes the entire agreement of [CAG] and [Plaintiff] as to the subject matter hereof[.]" (Pl.'s Opp'n Br. to Defs.' Mot. to Dismiss, Ex. B, 5.) Plaintiff contends that because the Employment Agreement is silent on the treatment of Plaintiff's Options in the event of a transaction, this provision only applies to "his compensation, including the vesting and exercise price of stock options[.]" (Pl.'s Opp'n Br. 10.) Wang, instead, contends that "the subject matter hereof" includes Plaintiff's Options generally, including their treatment in a transaction.

(Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl., 26-27, ECF No. 32-1.) Because the Court finds both interpretations reasonable, it will not choose between them at the pleading stage. *Talkdesk*, 2024 WL 2799307, at *4 ("Dismissal is proper only if [defendant's] interpretation is the *only* reasonable construction as a matter of law." (citations and quotations omitted)).

Wang's second argument, that the Form 6-K destroys any possibility of reasonable reliance, is defeated by his own admission that "[t]he Form 6-K likewise provided that each 'CAG employee stock option outstanding immediately prior to the [c]losing will be converted into an option to purchase' CENN ordinary shares." (Wang's Moving Br. 14.) Wang, however, argues that Plaintiff's Options are, in fact, *not* employee stock options because Plaintiff was not an employee at the time of the Transaction. (*Id.*) The Form 6-K, however, details an August 1, 2017, option grant of 6,300,000 options at an exercise price of $1.6500 to $1.8792. (Defs.' Mot. to Dismiss the Original Compl., Ex. A, 81.) That option grant is the same amount and exercise price as the options granted in the Employment Agreement dated July 15, 2017. (*Compare id.*, *with* Am. Compl., Ex. B, 1.) These options are listed as being granted to "employees and directors." (Defs.' Mot. to Dismiss the Original Compl., Ex. A, 81.) Options granted to an employee are often described as "employee stock options" even after the employee departs. *See In re Cendant Corp. Secs. Litig.*, 181 F. App'x 206, 208 (3d Cir. 2006) (describing options issued to a departed employee as "employee stock options"); *see generally Scully v. US WATS, Inc.*, 238 F.3d 497 (3d Cir. 2001) (describing options issued to a terminated employee as "employee stock options"). When the Form 6-K was filed, Plaintiff was no longer an employee, but his Options were nevertheless described as being granted to "employees and directors" and listed under the subheading: "Share options granted by CAG Cayman to employees of the Company" on the Form 6-K. (Defs.' Mot. to Dismiss the Original Compl., Ex. A, 80.) Language in a Form 6-K stating that

11

only "employee stock option[s]" would be converted in an anticipated transaction does not give unequivocal notice to former employees that their vested options earned during employment will not be converted.

## IV. CONCLUSION

For the reasons set forth above, the Court denies both Motions for Reconsideration. An order consistent with this Memorandum Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE